IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PARTS ID, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>IDPARTS LLC,<br><br>       Defendant. | Civil Action No.  20-cv-11253 |

IDPARTS LLC,

       Counterclaim Plaintiff,

v.

PARTS ID, LLC and PARTS ID, INC.,

       Counterclaim Defendants.

**IDPARTS' MEMORANDUM IN SUPPORT OF ITS
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

ARGUMENT ................................................................................................................. 6

   I.  Summary Judgment Standard ........................................................................ 6

   II.  IDParts Was First To Use, And Therefore, Owns The Right To Use The Mark
      ID For Automotive Parts............................................................................... 6

      A.  There Is No Question Of Material Fact That IDParts Was First To Use The
         Mark ID ........................................................................................... 6

      B.  PARTS iD's Claims That It Has Priority Fail As A Matter Of Law...................... 11

         1.  PARTS iD's Use Of The Mark CARID Does Not Allow It To Claim
             Earlier Priority To The Mark ID Alone—Such Tacking Is Not
             Permitted ......................................................................................11

         2.  PARTS iD's Application Of The Confusion Standard Is Improper ...............16

   III. PARTS iD Should Be Found To Infringe IDParts' Rights And Its Registrations
      Should Be Cancelled—IDParts Has Priority And PARTS iD Concedes
      Confusion In Its Complaint............................................................................ 18

      A.  PARTS iD Has Conceded Infringement of IDParts' Rights ................................. 19

      B.  The Court Should Cancel PARTS iD's ID Registrations....................................... 19

CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Am. Paging, Inc. v. Am. Mobilphone, Inc.*,
  13 U.S.P.Q.2d 2036 (T.T.A.B. 1989) .................................................. 13

*B & B Hardware, Inc. v. Hargis Indus.*,
  *Inc.*, 575 U.S. 138 (2015) ................................................................. 19

*Blanchard Imp. & Distrib. Co. v. Charles Gilman & Son, Inc.*,
  353 F.2d 400 (1st Cir. 1965) ............................................................... 6

*Boston Duck Tours, LP v. Super Duck Tours, LLC*,
  531 F.3d 1 (1st Cir. 2008) ............................................................ 17, 18

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ........................................................... 12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................... 6

*Colt Defense LLC v. Bushmaster Firearms, Inc.*,
  486 F.3d 701 (1st Cir. 2007) ............................................................... 6

*Corp. Fitness Programs v. Weider Health and Fitness*,
  2 U.S.P.Q.2d 1682 (T.T.A.B. 1987) ................................................... 13

*Cunningham v. Laser Golf Corp.*,
  222 F.3d 943 (Fed. Cir. 2000) ........................................................... 20

*Ford Motor Co. v. Summit Motor Prod., Inc.*,
  930 F.2d 277 (3rd Cir. 1991) ............................................................... 6

*Giant Food, Inc. v. Nation's Foodservice, Inc.*,
  710 F.2d 1565 (Fed. Cir. 1983) ................................................... 17, 18

*Hana Fin., Inc. v. Hana Bank*,
  574 U.S. 418 (2015) .................................................................... 12, 17

*In re EBS Data Processing, Inc.*,
  212 U.S.P.Q. 964 (T.T.A.B. 1981) ..................................................... 16

*Keebler Co. v. Rovira Bisquit Corp.*,
  624 F.2d 366 (1st Cir. 1980) ............................................................... 6

*Park 'N Fly, Inc v. Dollar Park & Fly*, Inc.,
469 U.S. 189 (1985) .................................................................................... 17

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
897 F. Supp. 2d 856 (N.D. Cal. 2012) ....................................................... 19

*Polo Fashions, Inc. v. Extra Special Prods., Inc.*,
451 F. Supp. 555 (S.D.N.Y. 1978) ............................................................ 13

*Pro–Cuts v. Schilz–Price Enters. Inc.*,
1993 WL 266611 (T.T.A.B. 1993) ............................................................ 13

*Specht v. Google Inc.*,
758 F. Supp. 2d 570 (N.D. Ill. 2010) ........................................................ 12

*The Wet Seal, Inc. v. FD Mgmt., Inc.*,
2007 WL 458529 (T.T.A.B. Feb. 9, 2007) ................................................ 12

*Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*,
926 F.2d 1156 (Fed. Cir. 1991) ................................................... 12, 13, 17

*Viviane Woodard Corp. v. Roberts*,
1974 WL 19921 (T.T.A.B. 1974) .............................................................. 13

*Volkswagenwerk Aktiengesellschaft v. Wheeler*,
814 F.2d 812 (1st Cir. 1987) ....................................................................... 6

## STATUTES

15 U.S.C. § 1052(d) ............................................................................... 19, 20

15 U.S.C. § 1056 ......................................................................................... 15

15 U.S.C. § 1119 ................................................................................... 19, 20

## OTHER AUTHORITIES

J. Thomas McCarthy,
McCarthy on Trademarks and Unfair Competition ("McCarthy"), § 16:35 (5th ed.
2018) ............................................................................................................ 6

McCarthy, § 20:53 ...................................................................................... 19

TMEP § 1213.05(a) ..................................................................................... 16

TMEP §§ 1213, 1213.03(a) ......................................................................... 15

TMEP, § 1213.05 ........................................................................................ 16

TMEP, § 903 ............................................................................................................ 10

U.S. Trademark Manual of Examining Procedure (Oct. 2018) ("TMEP") § 906 .............. 14

**RULES**

Fed. R. Civ. P. 56(c) ................................................................................................. 6

**REGULATIONS**

37 C.F.R. § 2.34 (a)(1)(ii)-(iii) .................................................................................. 10

## <u>INTRODUCTION</u>

This Motion for Partial Summary Judgment presents a simple question: Who, between Plaintiff PARTS iD and Defendant IDParts, first used the mark ID alone for automotive parts? PARTS iD has made the answer to this question simple as well: It is uncontested that IDParts began using an "ID" mark, as shown below (with the mark blown up from an image of its original web page), to sell automotive parts on the internet ***as early as January 2010***:



PARTS iD, although it used the mark CARID earlier in 2009, has provided *no evidence* that it used the mark ID alone ***until 2013***. It even conceded in each of its trademark applications for the "ID" trademark registrations that it did not use its ID mark until 2013—three years after IDParts' first use. There is no question of material fact that IDParts used its ID mark before PARTS iD, and IDParts requests summary judgment on the issue of priority of use.

IDParts also requests partial summary judgment (a) declaring that PARTS iD is infringing IDParts' ID mark and (b) ordering that PARTS iD's "ID" trademark registrations be cancelled. As for infringement, PARTS iD conceded in its Second Amended Complaint against IDParts that its ID marks are confusingly similar to IDParts' ID mark. *E.g.*, Dkt. 29, ¶ 79. With that concession, and IDParts' priority of use, there is no question of material fact that PARTS iD infringes IDParts'

rights. Similarly, to succeed in a cancellation of a trademark registration, a party must show no more than priority and a likelihood of confusion between the marks. Again, there is no question of material fact on either element.

For these reasons, detailed below, IDParts respectfully requests partial summary judgment.

## **BACKGROUND**

Defendant IDParts focuses its business on selling automotive parts on the internet—specifically, parts for diesel cars.[1] IDParts started business in 2006 and then became a limited liability company, TDIParts LLC, in November 2008.[2] Before December 2009, IDParts did business as TDIParts LLC.[3] In December 2009, however, it changed its name to IDParts.[4] Since then, IDParts has consistently and openly done business under the marks "ID," "IDParts," and "IDParts.com," using the domain <idparts.com> for its virtual store front.[5] IDParts has never been a brick-and-mortar business, and although it makes sales to specialty diesel repair shops, it has always made most of its sales direct-to-consumer through its website.[6]

With its name change in December 2009, IDParts needed to revamp its website to reflect its new name. On that website, as of January 2010, IDParts prominently displayed its name IDParts, but also used the mark ID alone. As highlighted and enlarged below, it used a lower-case

---

[1] Decl. of Corey Evans ("Evans Decl.") (filed herewith), ¶ 3.

[2] *Id.* at ¶ 5.; Ex. A, Copy of Mass. Corps. Div.'s Business Entity Summary for IDParts LLC. Exhibits A-H are attached to the Evans Decl., and Exhibits I-Q are attached to the Decl. of John Strand, Esq. (filed herewith).

[3] Evans Decl. ¶ 6; Ex. A, Copy of Mass. Corps. Div.'s Business Entity Summary for IDParts LLC.

[4] *Id.*

[5] Evans Decl. ¶¶ 12-13.

[6] *Id.* at ¶ 4.

"id" in a circle throughout its website as a substitute for product pictures whenever it did not have a picture of the item for sale:[7]



IDParts has continued to use the ID mark alone on its website to the present.[8] It only made one minor, almost imperceptible modification in or about 2013; replacing the dot above the "i" in the ID mark with an oil droplet:[9]



---

[7] Def.'s LR 56.1 Statement ("LR 56.1") ¶ 1; Evans Decl. ¶¶ 10-11; Ex. B, IDParts Website, at https://www.idparts.com/ (Jan. 5, 2010 Web Capture).

[8] LR 56.1 ¶ 2; Evans Decl. ¶ 12; Ex. C, IDParts Website, at https://www.idparts.com/ (Aug. 14, 2011 Web Capture); Ex. D, IDParts Website, at https://www.idparts.com/ (Feb. 22, 2012 Web Capture); Ex. E, IDParts Website, at https://www.idparts.com/ (Aug. 5, 2013 Web Capture); Ex. F, IDParts Website, at https://www.idparts.com/ (Apr. 19, 2015 Web Capture); Ex. G, IDParts Website, at https://www.idparts.com/ (June 6, 2017 Web Capture); Ex. H, IDParts Website, at https://www.idparts.com/ (Aug. 4, 2020 Web Capture).

[9] Evans Decl., ¶ 14; Ex. E, IDParts Website, at https://www.idparts.com/ (Aug. 5, 2013 Web Capture).

Plaintiff PARTS iD—formerly Onyx Enterprise Int'l Corp. until after it sued Defendant IDParts[10] —also sells automotive parts on the web. It allegedly began business as "CARID" in or around 2008.[11] But, as PARTS iD admits and as it shows in the image on the right from its Second Amended Complaint, it always used the mark CARID—*not ID alone*—throughout 2009.

Eventually, in 2013, three years after IDParts adopted its ID mark, PARTS iD adopted its own ID mark, as shown in the screenshot below:[12]





*CARiD.com – Nov. 29, 2013*

---

[10] Throughout this Memorandum, IDParts accepts Plaintiff PARTS iD, LLC's representations in its Second Amended Complaint that it is the successor-in-interest to the originally named Plaintiff, Onyx Enterprise Int'l Corp. That acceptance is not a concession or waiver on the issue or related issues. Discovery on this issue is on-going, and that discovery does not affect the outcome of this IDParts' motion.

[11] Second Am. Compl. ("Complaint") (Dkt. 29), ¶ 12 ("In 2008, Onyx launched its first iD® branded platform, www.CARiD.com.").

[12] Ex. I, PARTS iD Website, at https://www.carid.com/ (Nov. 29, 2013 Web Capture).

PARTS iD also conceded in each application that led to its federal trademark registrations— U.S. Reg. Nos. 5,658,672; 5,804,750; 6,096,254—that the earliest date it used its ID marks, in any form, was "as early as" 2013.[13] PARTS iD has produced no evidence showing any earlier use.

Despite a decade of peaceful co-existence between the two parties, PARTS iD sued IDParts on June 30, 2020.[14] After IDParts counsel raised issues with certain counts in the initial complaint, PARTS iD filed a First Amended Complaint on August 14, 2020.[15] Now, after Onyx Enterprises Int'l, Corp. merged or otherwise combined with PARTS iD (previously Legacy Acquisition Corp.), PARTSiD filed a Second Amended Complaint on January 22, 2021.[16] IDParts filed counterclaims for trademark infringement of its ID mark (Count I), trademark infringement of its IDPARTS mark (Count II), cancellation of PARTS iD's registrations directed to the mark ID (Count III), and various state claims (Counts IV and V).[17]

On January 29, 2021, the Court set a schedule permitting IDParts to file this early partial summary judgment motion, focusing on the issues of priority.[18]

---

[13] Ex. J, Trademark File Wrapper for U.S. Registration No. 5,658,672 "ID (stylized)," at 101; Ex. K, Trademark File Wrapper for U.S. Registration No. 5,804,750 "ID (stylized)," at 54; Ex. L, Trademark File Wrapper for U.S. Registration No. 6,096,254 "ID (stylized)," at 36.

[14] Compl. (Dkt. 1).

[15] First Am. Compl. (Dkt. 14).

[16] Second Am. Compl. (Dkt. 29).

[17] Dkt. 31.

[18] Dkt. 28 (setting early motions deadline for February 26, 2021; response by March 26; reply due by April 2); Dkt. 30 (confirming dates).

**ARGUMENT**

**I.      Summary Judgment Standard**

Summary judgment is appropriate where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Summary judgment is as appropriate in trademark cancellation cases as it is in any other case. *See, e.g.*, *Colt Defense LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 710 (1st Cir. 2007) (affirming summary judgment of no infringement and cancellation counterclaim).

**II.     IDParts Was First To Use, And Therefore, Owns The Right To Use The Mark ID For Automotive Parts**

    **A.      There Is No Question Of Material Fact That IDParts Was First To Use The Mark ID**

It is black letter law that "[i]n the United States, ownership goes to the first to use a designation as a trademark, not to the first to register." J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY"), § 16:35 (5th ed. 2018); *see Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 819 (1st Cir. 1987) (citing *Keebler Co. v. Rovira Bisquit Corp.*, 624 F.2d 366, 372 (1st Cir. 1980)); *Blanchard Imp. & Distrib. Co. v. Charles Gilman & Son, Inc.*, 353 F.2d 400, 401 (1st Cir. 1965) ("[R]ights to a mark do not arise out of registration, but accrue from prior use. The exclusive right to use a particular mark belongs to the one who first uses it in connection with a particular line of business."); *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 292 (3rd Cir. 1991) (citations omitted) ("the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce").

Here, the uncontested facts show that Defendant IDParts used the mark ID as a trademark, alone and with no modifiers, before PARTS iD. By as early as January 2010, after its name change

and when IDParts relaunched its website (as shown in the image in the Introduction and Background, above) IDParts was using the mark ID alone as a trademark.[19]

Since that early use in January 2010, IDParts has continually used either that ID mark, or the nearly identical mark, with an oil drop instead of a dot above the "i":[20]



*IDParts.com – August 14, 2011*



*IDParts.com – February 22, 2012*

---

[19] LR 56.1 ¶ 1; Evans Decl., ¶ 10; Ex. B, IDParts Website, at https://www.idparts.com/ (Jan. 5, 2010 Web Capture).

[20] LR 56.1 ¶ 2; Evans Decl., ¶¶ 12, 14; Ex. C, IDParts Website, at https://www.idparts.com/ (Aug. 14, 2011 Web Capture); Ex. D, IDParts Website, at https://www.idparts.com/ (Feb. 22, 2012 Web Capture); Ex. E, IDParts Website, at https://www.idparts.com/ (Aug. 5, 2013 Web Capture); Ex. F, IDParts Website, at https://www.idparts.com/ (Apr. 19, 2015 Web Capture); Ex. G, IDParts Website, at https://www.idparts.com/ (June 6, 2017 Web Capture); Ex. H, IDParts Website, at https://www.idparts.com/ (Aug. 4, 2020 Web Capture).




*IDParts.com – August 5, 2013*





*IDParts.com – April 19, 2015*

*IDParts.com – June 6, 2017*



*IDParts.com – Aug. 4, 2020*

PARTS iD, however, only started using the mark ID alone—not as part of its CARID mark—in or about November 2013:[21]



*CARiD.com – Nov. 29, 2013*

Before that, PARTS iD always used the complete CARID mark, not the mark ID alone:[22]



*CARiD.com – August 9, 2011*

These dates align with the dates of first use that PARTS iD told the Trademark Office during prosecution of its trademark applications. PARTS iD admitted in its trademark applications

---

[21] LR 56.1 ¶ 3; Ex. I, PARTS iD Website, at https://www.carid.com/ (Nov. 29, 2013 Web Capture).

[22] LR 56.1 ¶ 4; Ex. M, PARTS iD Website, at https://www.carid.com/ (Aug. 9, 2011 Web Capture).

that it did not use the mark ID alone, in any form, until in 2013. On April 16, 2014, PARTS iD filed Application No. 86/253,327 for the following design mark, which eventually issued as U.S. Registration No. 5,658,672:[23]



When PARTS iD stated its first use dates in its application,[24] it claimed its "First Use Anywhere Date" as "at least as early as 09/01/2013" and its "First Use in Commerce Date" as "at least as early as 09/01/2013."[25] In its other ID-based applications, PARTS iD repeated and reinforced that it did not use the mark ID alone in any form until at least 2013. When prosecuting the application that led to U.S. Reg. No. 6,096,254, for the design shown below, PARTS iD stated that that it did not use the mark until "at least as early as 06/01/2018" for both its "First Use Anywhere" and "First Use In Commerce" dates:[26]



---

[23] LR 56.1 ¶ 5; Ex. J, Trademark File Wrapper for U.S. Registration No. 5,658,672 "ID (stylized)", at 13.

[24] 37 C.F.R. § 2.34 (a)(1)(ii)-(iii); TMEP, § 903 ("When asserting use of a mark in commerce in a trademark or service mark application, an applicant must specify the date of first use anywhere and the date of first use in commerce.").

[25] LR 56.1 ¶ 6; Ex. J, Trademark File Wrapper for U.S. Registration No. 5,658,672 "ID (stylized)", at 101.

[26] LR 56.1 ¶¶ 9-10; Ex. L, Trademark File Wrapper for U.S. Registration No. 6,096,254 "ID (stylized)", at 36.

PARTS iD repeated those 2018 dates in its application for U.S. Reg. No. 5,804,750, also for the design shown above.[27] Further, in that same application, PARTS iD stated that "[t]he mark was first used anywhere in a different form other than that sought to be registered at least as early as 09/01/2013,"[28] again reinforcing that PARTS iD simply did not use the mark ID, in any form, until 2013.

PARTS iD has identified no evidence, either in its interrogatory answers or its Answer to IDParts' counterclaims, to the contrary. Under a straightforward application of the law of trademark priority to the uncontested facts, IDParts has priority of use, and therefore is the owner of the mark ID for automotive parts as a matter of law.

**B.     PARTS iD's Claims That It Has Priority Fail As A Matter Of Law**

PARTS iD, in its interrogatory responses and in its answer to IDParts' counterclaims, drags out several misleading arguments in an attempt to avoid summary judgment. Each alleged defense fails as a matter of law.

**1.     PARTS iD's Use Of The Mark CARID Does Not Allow It To Claim Earlier Priority To The Mark ID Alone—Such Tacking Is Not Permitted**

PARTS iD cannot claim that its ID mark is an evolution or continuation of its CARID mark, allowing it to claim rights back to 2009 for the ID mark.

Companies routinely change their logos and marks. For instance, Pepsi has modernized its logo many times since the 1800s. But Pepsi's new mark does not automatically give it priority from the time when it first started using its original mark. Similarly, PARTS iD's use of the mark CARID does not automatically give it priority of use for a different mark, ID.

---

[27] LR 56.1 ¶¶ 7-8; Ex. K, Trademark File Wrapper for U.S. Registration No. 5,804,750 "ID (stylized)", at 54.

[28] *Id.*

Instead, in order to "tack" the priority date of its old mark to its new mark, PARTS iD must show that the change "neither creates a new mark nor changes the commercial impression created by the old mark." McCARTHY, § 17:26. The marks must be "legal equivalents" such that the two marks "'create the same, continuing commercial impression' so that consumers 'consider both as the same mark.'" *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015) (citations omitted).

The standard to show that two marks convey the same commercial impression is exceedingly high. *Specht v. Google Inc.*, 758 F. Supp. 2d 570, 583 (N.D. Ill. 2010) (citation omitted) ("A stringent standard exists for a mark owner to prove tacking, and a court should rarely grant it.") *aff'd*, 747 F.3d 929 (7th Cir. 2014); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1048 (9th Cir. 1999) ("The standard for 'tacking,' however, is exceedingly strict"); *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1160 (Fed. Cir. 1991) (discussing "stringent standards applicable to tacking proposals," and holding that "[t]acking is [only] occasionally permitted"), *other holdings abrogated by Hana Fin., Inc.*, 574 U.S. 418; *The Wet Seal, Inc. v. FD Mgmt., Inc.*, 2007 WL 458529, at *5-6 (T.T.A.B. Feb. 9, 2007) (citation omitted) (standard for tacking is "very strict" and is permitted only in "rare cases"; holding ARDENBEAUTY cannot be tacked on earlier use of mark ELIZABETH ARDEN).

Here, there is no question that PARTS iD's use of the mark CARID in 2009 does not convey the same commercial impression as the mark ID alone—*i.e.*, a consumer would not consider both as the same mark. Though it is Plaintiff PARTS iD's burden to show the marks engender the same commercial impression, PARTS iD has produced no such evidence. Indeed, all of the evidence shows that the marks are legally *dis*similar.

*First,* other courts and the U.S. Trademark Trial & Appeal Board ("TTAB") have uniformly found that simply shortening a mark from a longer, multi-word mark to a one word

mark—similar to what PARTS iD argues here—does not lead to the same commercial impression between the marks:

- SHAPE mark cannot be tacked on earlier SHAPE UP mark, *Corp. Fitness Programs v. Weider Health and Fitness*, 2 U.S.P.Q.2d 1682, 1689 (T.T.A.B. 1987) (set aside by settlement);
- EGO cannot be tacked on earlier use of mark ALTER EGO, *Viviane Woodard Corp. v. Roberts*, 1974 WL 19921, at *1 (T.T.A.B. 1974);
- POLO cannot be tacked on earlier use of mark MARCO POLO, *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555, 562-63 (S.D.N.Y. 1978);
- CLOTHES THAT WORK cannot be tacked on earlier use of mark CLOTHES THAT WORK. FOR THE WORK YOU DO., *Van Dyne-Crotty, Inc.*, 926 F.2d at 1160; and,
- AMERICAN MOBILPHONE PAGING cannot be tacked on earlier use of AMERICAN MOBILPHONE, *Am. Paging, Inc. v. Am. Mobilphone, Inc.*, 13 U.S.P.Q.2d 2036, 2038 (T.T.A.B. 1989), *aff'd, unpublished op.*, 923 F.2d 869(Fed. Cir. 1990).

The TTAB has even found when there is a slight change in the spelling between two marks, tacking is not appropriate. *See, e.g.*, *Pro–Cuts v. Schilz–Price Enters. Inc.*, 1993 WL 266611, at *4 (T.T.A.B. 1993) (PRO-CUTS design mark cannot be tacked on earlier PRO-KUT design mark). Considering this history of case law, it is baseless for PARTS iD to argue that somehow its use of ID can be tacked onto its earlier use of the mark CARID.

*Second,* PARTS iD has repeatedly admitted on its website that the marks CARID and ID are separate and distinct marks. For instance, in early 2013, before it even applied for a registration on any ID mark, it maintained the following use of the mark CARID on its website: [29]



*CARiD.com – February 16, 2013*

---

[29] Ex. N, PARTS iD Website, at https://www.carid.com/ (Feb. 16, 2013 Web Capture).

As seen on the upper right-hand corner of the logo, PARTS iD used the circle-® trademark symbol. As PARTS iD owned no ID-based registration at the time,[30] it was identifying *the entire wording* CARID as its mark. *See* U.S. TRADEMARK MANUAL OF EXAMINING PROCEDURE (Oct. 2018) ("TMEP") § 906 ("The federal registration symbol may not be used with marks that are not actually registered in the USPTO.").

Even today, PARTS iD uses both the marks ID and CARID on its website, as shown below, demonstrating that PARTS iD recognizes that consumers view the marks as different—if they were the same, why would it use both marks, right next to each other?



*CARiD.com – February 22, 2021*[31]

*Third*, PARTS iD effectively admitted during the prosecution of its trademark applications that the marks CARID and ID are not legally the same because it never disclaimed "CAR" as part of its CARID registration. On April 21, 2009, PARTS iD filed Application No. 77/718,242 for the mark CARID as a "standard character mark,"[32] meaning the registration is supposed to cover the use of the mark CARID in any design form. *See* 37 C.F.R. § 2.52(a). The specimen of use that

---

[30] LR 56.1 ¶ 11.

[31] Ex. O, PARTS iD Website, at https://www.carid.com/ (Feb. 22, 2021 Web Capture).

[32] Ex. P, Trademark File Wrapper for U.S. Registration No. 3,711,746 "CARID", at 4.

PARTS iD submitted with the application contains numerous instances of its use of the marks CARID or CARID.COM in different forms:[33]






Despite these uses, there is not a single instance in the specimen of PARTS iD using the mark ID alone.

More important, during the prosecution of this application, PARTS iD was not required to disclaim the descriptive (what PARTS iD calls "generic") "CAR" portion of its CARID mark, nor did it voluntarily disclaim that portion of its mark.[34] When a mark consists of several elements or words, the Trademark Office will routinely require applicants to disclaim those portions of the mark that are "unregistrable," such as descriptive or generic words. *See* 15 U.S.C. § 1056 ("The Director may require the applicant to disclaim an unregistrable component of a mark otherwise registrable. An applicant may voluntarily disclaim a component of a mark sought to be registered."); TMEP §§ 1213, 1213.03(a) ("Typically, an unregistrable component of a registrable mark is … **matter that is merely descriptive or deceptively misdescriptive of the goods or services**…" ) (emphasis added).

---

[33] *Id.* at 2, 9.

[34] *Id.* at 13-14, 26.

Using PARTS iD's analysis, if it thought CAR was separable from the mark CARID and generic or descriptive, it should have disclaimed "CAR"—but it did not. And the reason the Trademark Office did not require it to disclaim "CAR" is because CARID is a so-called "compound" mark, and no such disclaimer is required for such marks because they are "unitary," *creating a "commercial impression separate and apart" from its individual parts. See* TMEP, §§ 1213.05 (discussing unitary marks, generally), 1213.05(a) (discussing compound marks as a type of unitary mark; "A compound word mark is comprised of two or more distinct words (or words and syllables) that are represented as one word (e.g., BOOKCHOICE, PROSHOT, MAXIMACHINE, and PULSAIR). *If a compound word mark consists of an unregistrable component and a registrable component combined into a single word, no disclaimer of the unregistrable component of the compound word will be required*.") (emphasis added) (citation omitted). Since PARTS iD did not have to disclaim, and never voluntarily disclaimed, the word "CAR" from its CARID registration, it further reinforces the conclusion that CARID and ID do not have the same commercial impression. *See In re EBS Data Processing, Inc.*, 212 U.S.P.Q. 964, 966 (T.T.A.B. 1981) ("A disclaimer of a descriptive portion of a composite mark is unnecessary … if the elements are so merged together that they cannot be regarded as separable elements.").

As a matter of law, PARTS iD simply developed no independent rights in the mark ID, in any form, by its use of the mark CARID.

### 2.    PARTS iD's Application Of The Confusion Standard Is Improper

In its interrogatory answers[35] and answer to IDParts' counterclaims,[36] PARTS iD repeats a version of the argument excerpted below, with the same case citations:

---

[35] Ex. Q, Pl.'s Resps. to Def.'s Interrogs., at 9-10.

[36] Pl.'s Affirmative Defenses to Def.'s Countercls. (Dkt. 32) ¶ 3.

Defendant's emphasis upon the use of "car" in the [2009] logo is misplaced and does not change the fact that commercially and legally, Plaintiff's central branding focused upon ID in the automotive industry. Given the fact that Plaintiff is an ecommerce platform selling car parts, fitments and accessories, the word "car" is a generic modifier that lends no protectable effect. *Park 'N Fly, Inc v. Dollar Park & Fly*, Inc., 469 U.S. 189, 193-194 (1985) (stating that generic components are unprotectable); *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 13-14 (1st Cir. 2008) (stating that "car" is generic). As the dominant features of both PARTS iD and IDParts branding is "ID", IDParts' junior use is infringing. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983) (citations omitted).

PARTS iD's analysis is wrong, and its case citations are inapposite.

Each case that PARTS iD cites to support its argument has nothing to do with tacking, the doctrine applicable to the situation before this Court. In *Park 'N Fly, Inc.*, the Supreme Court was merely reiterating the oft-stated description of what a "generic" mark is: "generic term is one that refers to the genus of which the particular product is a species." 469 U.S. at 194 (citation omitted). In *Boston Duck Tours, LP*, the First Circuit was explaining the same, 531 F.3d at 13-14. Not only do the cited portions of these decisions not address "generic components" of a mark, as PARTS iD claims, their holdings are inapplicable to the question before the Court here: Priority of use.

*Boston Duck Tours* and *Giant Food* were discussing the test for whether two competing marks are "confusingly similar," *i.e.*, is there is a likelihood of confusion between two marks. *Boston Duck Tours*, 531 F.3d at 24-25; *Giant Food*, 710 F.2d at 1570. **That test is a different test than the one used to analyze tacking**. *Van Dyne-Crotty, Inc.*, 926 F.2d at 1159  ("As the Board correctly noted, the standard of legal equivalence used in reviewing efforts to 'tack' the prior use of one mark onto that of another is higher than that used in evaluating two competing marks. … for the purposes of 'tacking,' **even if the two marks are confusingly similar, they still may not be legal equivalents**.") (emphasis added) (citations omitted), *other holdings abrogated by Hana Fin., Inc.*, 574 U.S. 418.

- 17 -

PARTS iD further errs by relying on these cases for the incorrect proposition that "the word 'car' is a generic modifier that lends no protectable effect."[37] Both *Boston Duck Tours* and *Giant Food* make the incorrectness of this proposition quite evident. Both restate the legal proposition that just because a mark may include descriptive or generic words, those portions may be given less effect, but they are still given "protectable effect" (PARTS iD's language) when analyzing infringement. *Boston Duck Tours*, 531 F.3d at 24 ("Although 'similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features,' … we give less weight to the generic portions of the parties' respective, composite marks.") (citations omitted);[38] *Giant Food*, 710 F.2d at 1570 ("[I]t is well settled that the disclaimed [generic or descriptive] material still forms a part of the mark and cannot be ignored in determining likelihood of confusion.") (citations omitted). In short, the cases PARTS iD repeatedly relies upon are inapposite, at best.

\* \* \* \*

Throughout its Answer to IDParts' Counterclaims and its interrogatory answers, PARTS iD not only presents no evidence to show it had a priority of use for the mark ID alone; it also fails to identify any legal doctrine or case that would support its position.

### III.   PARTS iD Should Be Found To Infringe IDParts' Rights And Its Registrations Should Be Cancelled—IDParts Has Priority And PARTS iD Concedes Confusion In Its Complaint

As IDParts has established that it has priority in use over PARTS iD, and therefore ownership rights in the circle-ID mark, the Court should find that (a) PARTS iD infringes IDParts'

---

[37] *Id.*

[38] As discussed in Section II.B.1, the standard character mark CARID is a compound mark, not a composite mark, so *Boston Duck Tours* is even less applicable.

rights (Count I of IDParts' Counterclaims) and, (b) IDParts' registrations for its ID marks should be cancelled (Count III of IDParts' Counterclaims).

### A.     PARTS iD Has Conceded Infringement of IDParts' Rights

PARTS iD states in its Second Amended Complaint ("Complaint") that IDParts' use of its ID mark will cause consumer confusion with PARTS iD's use of its ID marks. *See, e.g.*, Complaint (Dkt. 29), ¶ 79 ("Defendant's unauthorized use of Plaintiff's iD® Mark, and/or confusingly similar variations thereof, is causing and is likely to continue to cause confusion, or to cause mistake, or to deceive, consumers and the relevant public into falsely believing that ID Parts is affiliated, connected, or associated with Plaintiff's iD® Mark."). Now that IDParts has established that it has priority and therefore ownership rights in the ID mark, PARTS iD has conceded through its Complaint that it infringes ***IDParts'*** rights. IDParts requests that summary judgment should so enter.

### B.     The Court Should Cancel PARTS iD's ID Registrations

Under 15 U.S.C. § 1119, the federal courts have the right to "order the cancelation of registrations." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015) ("district courts can cancel registrations during infringement litigation"). And "[f]ederal courts may cancel registrations based on the same grounds that would be applied by the U.S. Patent and Trademark Office [TTAB]." *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 869-70 (N.D. Cal. 2012) (citation omitted), *aff'd*, 737 F.3d 546 (9th Cir. 2013). It is routine for the TTAB to cancel trademark registrations based on a confusingly similarity, or a likelihood of confusion, between a senior user's mark (here, IDParts) and a junior user's mark (here, PARTS iD). MCCARTHY, § 20:53 ("[T]he most common ground of cancellation is Lanham Act § 2(d) [15 U.S.C. § 1052(d)]. This is the claim that petitioner owns a prior registered mark or that petitioner has prior use of a mark or trade name that is confusingly similar to registrant's mark. … [T]he test

under § 2(d) is one of likelihood of confusion."); *see, e.g.*, *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 944 (Fed. Cir. 2000) (affirming cancellation of registration of LASERSWING for golf clubs on petition of prior user of LASER for golf clubs and balls).

Here, IDParts requests cancellation of U.S. Trademark Registration Nos. 5,658,672; 5,804,750; and 6,096,254 in its Count III counterclaim. IDParts respectfully requests the Court grant summary judgment on Count III because (a) IDParts has established above that it has priority in its use of the mark ID (*see* Section II), and, (b) as PARTS iD concedes in its Complaint that its use of its ID-based marks is likely to cause confusion with IDParts' (prior) use of its ID-based mark (*see* Section III.A).

## **CONCLUSION**

For the foregoing reasons, IDParts respectfully requests the Court grant its Motion for Partial Summary Judgment, specifically entering judgment that: (1) IDParts used an ID mark—alone with no modifier—before PARTS iD and therefore has priority of use between it and PARTS iD, (2) PARTS iD infringes IDParts' ID mark (Counterclaim Count I), and (3) PARTS iD's U.S. Trademark Registration Nos. 5,658,672; 5,804,750; and 6,096,254 be cancelled under 15 U.S.C. §§ 1119 & 1052(d).

Respectfully submitted,

Date:  February 26, 2021

　　　　　　　　　　　　　 /s/ *John L. Strand*
　　　　　　　　　　　　 John L. Strand (BBO # 654985)
　　　　　　　　　　　　 Amanda B. Slade (BBO # 703951)
　　　　　　　　　　　　 jstrand@wolfgreenfield.com
　　　　　　　　　　　　 aslade@wolfgreenfield.com
　　　　　　　　　　　　 WOLF, GREENFIELD & SACKS, P.C.
　　　　　　　　　　　　 600 Atlantic Avenue
　　　　　　　　　　　　 Boston, MA 02210
　　　　　　　　　　　　 617.646.8000 Phone
　　　　　　　　　　　　 617.646.8646 Fax

　　　　　　　　　　　　 *Counsel for IDPARTS LLC*

## <u>CERTIFICATE OF SERVICE</u>

     I certify this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                    /s/ *John L. Strand*
                    John L. Strand