# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PARTS iD, LLC,** a New Jersey limited liability company,<br><br>**Plaintiff**,<br><br>   v.<br><br>**IDPARTS LLC,** a Massachusetts limited liability company,<br><br>**Defendant**. | Civil Action No. 20-cv-11253-RWZ<br><br><br><br>**PARTS iD'S L.R. 56.1 STATEMENT OF FACTS IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **IDPARTS, LLC**<br><br>**Counterclaim Plaintiff,**<br><br>**v.**<br><br>**PARTS iD, LLC and PARTS iD, INC.**<br><br>**Counterclaim Defendants** | |

Plaintiff PARTS iD, f/k/a Onyx Enterprises Int'l Corp., submits the following statements of material fact in dispute in support of its Opposition to IDParts's Motion for Partial Summary Judgment.  PARTS iD disputes the facts submitted by IDParts and provides additional facts that establish that material issues of fact exist precluding entry of partial summary judgment.

**<u>RESPONSE TO IDPARTS, LLC'S STATEMENT OF UNDISPUTED FACTS</u>**

1.     Deny.  IDParts did not use  to sell automotive parts on the internet in January 2010, or thereafter.  The trademark that IDParts used as a source identifier for its online retailer and wholesale operation from January of 2010 through February of 2012 was the following:



Corey Evans Decl. as attached to the Motion for Partial Summary Judgment, Ex. B–D.  IDParts used the following logo from February 2012 through June of 2017.



Evans Decl., Ex. E–F.  was never used as a source identifier for the online retailer and wholesaler of European Diesels and select American Diesel engine components.  Bradford Decl., Ex. 2, Deposition of IDParts's Corporate Designee Peter Noble, pp. 87: 16–89:15.  Further in support of the denial that IDParts used  as a trademark or a service mark, PARTS iD states as follows:

    a.    There is no record evidence of IDParts using  alone.  Evans Decl., Ex. B–H.  Or as a source identifier.  Bradford Decl., Ex. 3, Report by Chris Shoemaker, ¶¶42–44, 55-57; Ex. 4, Report by Steven Pokotilow, ¶¶9, 19–23, 25.

b.  The "ID" image depicted in Paragraph 1 of IDParts's Statement of Undisputed Facts is a partial image and fails to show the full image as deployed.  The full image states "id photo pending."



*See* Evans Decl., Ex. B.

c.  IDParts preferred to have the "id photo pending" image removed from the website:

```
101:25          Q.    Would you agree with me that as the
102:01   proprietor of this website that it was ultimately your
102:02   goal to eliminate locations where the ID Photo Pending
102:03   image appeared and replace it with a product photo?
102:04          A.    We would want to have -- we wanted photos
102:05   that -- products that were missing photos, we would
102:06   want to have photographs.
102:07          Q.    Did you have a time frame that you wanted
102:08   to have the ID Photo Pending image removed from the
102:09   site and have it replaced with a product image?
102:10          A.    No, not a specific time.
102:11          Q.    Were there instances where you would
102:12   remove the product from the website because you still
102:13   didn't have an image of the product?
102:14          A.    Not typically, no.
102:15          Q.    But it is true that if you could remove
```

```
102:16 the ID Photo Pending image from the website and
102:17 replace it with a product photo that was your
102:18 preference?
102:19        A.    We would prefer to have a photo of the
102:20 actual product on the website, yes.
```

Bradford Decl. Ex. 2, Noble Depo., pp. 102:25–102:20; *see also* Bradford Decl., Ex. 1,

Deposition of IDParts's Corporate Designee Corey Evans, pp. 58:21–60:1 (stating "we strive to

have good photography for our products, that way our customers can see the products.")

    d.   The "id photo pending" image serves as a "placeholder" image for missing photos of

        the actual products.  Bradford Decl., Ex. 1, Evans Depo., pp. 56:16–57:1; Ex. 4,

        Pokotilow Rep., ¶¶9, 19–23, 25.

    e.   IDParts takes steps to remove "id photo pending" image from the site.  Bradford

        Decl., Ex. 1, Evans Depo., pp. 49:02–50:25; Ex. 2, Noble Depo., pp. 100:03–102:20.

    f.   The image was always associated with products for which IDParts did not have a

        product image and was only used with products for which IDParts did not have a

        product image.  Bradford Decl., Ex. 1, Evans Depo., pp. 56:16–57:1, 58:21–60:1; Ex.

        2, Noble Depo., p. 100:3–:23.  Functionally, IDParts used an open-source catalogue

        module that IDParts uploaded product photos when available.  *Id.*  Bradford Decl.,

        Ex. 3, Shoemaker Rep., ¶¶ 45–53.  When the product photo field is empty, the open-

        source catalogue associated the "id photo pending" image with the product.  *Id.*

    g.   The "id photo pending" image does not always appear on www.IDParts.com.  For

        example, on January 23, 2010, the "id photo pending" image is removed and is not

        displayed:



Bradford Decl., Ex. 5, p. 10–11.

h.  The "id photo pending" image is functional and communicates to the viewer that the image for the product is missing but forthcoming.  Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶9, 19–23, 25.

i.  IDParts does not know where the "id photo pending" image appears on its website at any given time.  Bradford Decl., Ex. 1, Evans Depo., pp. 49:02–50:25.  When it appears, IDParts takes steps to remove it.  Bradford Decl., Ex. 1, Evans Depo., pp. 56:16–57:1, 58:21–60:1, 60:7–61:24.

j.  IDParts did not code the "id photo pending" image as a source identifier for IDParts's online retail and wholesale business.  Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶55–57; Ex. 4, Pokotilow Rep., ¶¶9, 19–23, 25.  The ALT and TITLE codes for the image is different with each placement, but never contains "ID" or "IDPARTS" as part of the code.  Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶55–57.



k.  An inspection of the ALT and TITLE codes for the "id photo pending" images featured on the exhibits attached to Mr. Corey Evans's Declaration in support of the Motion for Partial Summary Judgment reveals that none of the "id photo pending" images functioned as a source identifier.  Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶55–57.  As depicted above, the ALT and TITLE codes contain the name of the product for which the image is missing.  *Id.*  As a result, search engines would view the images presented by IDParts in support of its Motion as being an image of a third-party product, rather than a trademark.  *Id.*

l.  IDParts did not know how the coding for "id photo pending" would function and therefore cannot rebut Mr. Shoemaker.  Bradford Decl., Ex. 1, Evans Depo., pp. 115:14–117:20.

m.  The "id photo pending" image would not be accepted by the United States Patent & Trademark Office as a source identifying mark for IDParts's online retail and

wholesale ecommerce operation.   Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶9, 19–23, 25.

2.      Deny.  PARTS iD incorporates the facts, documents, and evidence set forth in response to Paragraph 1 of the Statement.

3.      Deny.  PARTS iD, formerly known as Onyx Enterprises Int'l Corp ("Onyx") launched in March of 2009 with ID as its core trademark.  PARTS iD's founders intentionally selected "ID" as its core trademark and deployed branding strategies, from logo design to search engine optimization strategies, that established ID as its core brand and eCommerce services within the automotive space. PARTS iD Chief Executive Officer Antonio Ciappina's Decl., ¶ 6–8.  Further in support of this denial, PARTS iD states as follows:

   a.   The trademark is pronounced as two words -- "CAR" and "ID."

   b.   As noted by IDParts's corporate designees, Mr. Peter Noble and Mr. Corey Evans, ID has no meaning within the automotive world.  Bradford Decl., Ex. 1, Evans Depo., p. 79:14–:22; Ex 2., Noble Depo., p. 139:5–:21.  ID is therefore fanciful.  *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 13 n.12 (1st Cir. 2008).  "CAR" is generic in the field of car part sales.  *See id.* at 13–14.

   c.   From 2009 through 2013, PARTS iD placed overt and intentional emphasis upon "iD," including the use of exaggerated font size and style, distinguishing bright colors, and the use of animations (i.e. stocking caps) to humanize "iD" to communicate to any consumer of car parts that "iD" is the source identifier for this company.  Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶26–30.



d. The tag line -  - placed added emphasis on "iD" as the dominate feature of this brand.

e. The word "car" was selected to modify iD® as it was short and generic.  Ciappina Decl., ¶8.

2. In the year before IDParts even existed, PARTS iD used the following logos, featuring "car" in black/white diminutive font offset against the exaggerated font size, monolithic font style, bright green color, and use of animations which drew the viewer's attention to iD.  *Id.* at ¶9; Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶27–28.

a.  PARTS iD coded the logos and meta-keywords with "ID" apart from "CAR" from March 10, 2009 through the present.  Ciappina Decl., ¶¶14–28; Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶18–31.

b.  The commercial impression imparted by PARTS iD branding has remained the same from 2009, with "imperceptible" changes in style over time.  Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶29–31.  In June of 2009, PARTS iD changed the case of the "I" in the "ID" eCommerce brand.  Ciappina Decl., ¶10.  The iD® eCommerce style remained unchanged from June of 2009 through 2012.  *Id.*; Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶29–31.  On January 2, 2013, PARTS iD colored the June 14, 2009 "iD" lettering in white and placed them on a field of green.  Ciappina Decl., ¶10.  The logo was placed in italics.  At the end of 2013, PARTS iD dropped the generic modifier, "car," and maintained the exact same iD brand originally deployed on June 14, 2009.  *Id.*; Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶26–34.  Through these changes, PARTS iD maintained a consistent



branding strategy that placed "iD" at the center of its commercial impression.
Ciappina Decl., ¶10.

c.   PARTS iD's search engine optimization ("SEO") strategies deployed in the first

year, and thereafter, further placed emphasis on "id", including the use of "id"

apart from "car" as a keyword in the ALT Codes and meta-Keywords.  Ciappina

Decl., ¶¶14–28; Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶20, 24–31.

d.   Well before IDParts existed, PARTS iD protected the iD Brand with a series of

trademark applications including a word mark for "C A R I D."

| Priority Date | Trademark Right | Image | Second Amended Complaint (Dkt 29) |
|---|---|---|---|
| Application Filing Date:  April 21, 2009 | Reg. No. 3711746 | United States of America<br>United States Patent and Trademark Office<br><br>CARID | ¶¶ 1, 12-16, 42-45, 48, 51, 57, 61-97. |
| March 10, 2009 | Common Law rights in Massachusetts and each of the other states in the United States. | March 21, 2009<br>CARID Top level car accessories for all tastes<br>June 14, 2009<br>CARID<br>October 12, 2009<br>CARID<br>November 16, 2009<br>CARID | ¶¶ 1, 12-16, 45, 48, 51, 61, 99-124 |

e.   As PARTS iD's use of iD did not change from year to year, PARTS iD's

registration of "ID" tacks back to its founding in 2009, before IDParts formed.

Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶26–34.

f.   When PARTS iD launched, its search engine optimization specialists coded "ID" as a separate keyword.  For example, the **WELLCOME TO CARID** banner was coded as follows:



Ciappina Decl., ¶16; Bradford Decl., Ex. 3, Shoemaker Rep., ¶18.

g.   Here, PARTS iD constructed this banner to have "ID" as an independent keyword, with a different font and color.  Specifically, search engines in 2009 would have recognized that "ID" signified a unique word.  This is strong indicator to the search engines that the word "ID" is distinctly relevant to the content of this web page, even apart from the word "CAR.":

```
<font color="#9ed016">ID</font>
```

Ciappina Decl., ¶¶17–18; Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶19–20.

h.   PARTS iD deployed similar coding strategies within the header of www.carID.com from 2009 through the present.  The Header is accessed by expanding the "HEAD" element at the top of the coding:



Ciappina Decl., ¶19; Bradford Decl., Ex. 3, Shoemaker Rep., ¶22.

11

    i.   Once the "HEAD" element is expanded, you are able to see the content that the search engines crawled when they searched the internet for content that is responsive to a query submitted by the search engine user in 2009.



Ciappina Decl., ¶20; Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶22–23.

    j.   In 2009 there were a number of points of coding embedded in the "HEAD." At its inception PARTS iD coded the following elements with "ID"

      i.   Title as follows:

```
<title> carID.com - Car & Truck Accessories
```

      ii.   Meta Keywords as follows

```
<meta name="keywords" content="car accessories, truck accessories, carid, car id,
carid.com">
```

      iii.   Meta Description:

```
<meta name="description" content="Your Vehicle's True Identity - Everything You N
eed to Bring Out the Person Behind the Ride - Custom Grills, Wood Grain, Spoiler
s, Chrome Accessories, and so much more!">
```

Ciappina Decl., ¶21; Bradford Decl., Ex. 3, Shoemaker Rep., ¶24.

k.  PARTS iD presented $id$ apart from $car$ in the Meta Keywords.  Like with the banner above, PARTS iD utilized the Keywords to communicate to the search engines to specifically recognize "ID" as an independent element identifying www.carID.com.  Ciappina Decl. ¶22; Bradford Decl., Ex. 3, Shoemaker Rep., ¶25.

l.  PARTS iD has always been very efficient with its use of key words, using only five keywords.  Ciappina Decl. ¶23; Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶26, 40.

m.  PARTS iD used "id" three times in the five keywords presented to the public.  This is a strong indicator that "ID" is an important element to this company's offering.  As the title, meta description and title all communicate that the company operating at www.carID.com sells car and truck accessories, the heavy use of $id$ and its use separate from $car$ is a strong indicator to the search engines that the word "ID" is just as relevant to this website's self-identification as words like "card" and "accessories." Ciappina Decl. ¶23; Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶26, 40.

n.  The above search engine optimization strategies were deployed by PARTS iD consistently from 2009 through the present.  PARTS iD uses the same keyword strategy and independent emphasis on ID throughout the years:

| Date | Coding | Exhibit |
|------|--------|---------|
| June 14, 2009 |  | Ex. 6, p. 5 |
| October 12, 2009 | | Ex. 6, p. 6 |
| Nov. 16, 2009 | | Ex. 6, p. 7 |



Ciappina Decl., ¶24; Bradford Decl., Ex. 3, Shoemaker Rep., ¶27.

   a. In 2013, PARTS iD changed their search engine optimization strategies to

     correspond with changes in the guidance published by the primary search engines,

such as Google.  With these shifts, PARTS iD included an "ALT" code for its

logo that separated ID from CAR consistent with the above strategies.  Ciappina

Decl., ¶25; Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶28–29.



b.  Specifically separating ID apart from CAR in the ALT Attribute is

significant. Ciappina Decl. ¶27; Bradford Decl., Ex. 3, Shoemaker Rep., ¶¶30, 40.

It is an expression by PARTS iD that ID is its brand within the field of

eCommerce sales of car parts.  *Id.*  This is consistent with the impression that

PARTS iD had attempted to impart to the search engines from 2009 as detailed

above.  *Id.*  In so doing, PARTS iD has maintained the same commercial

impression to the search engines regarding its identifying element.  *Id.*  Namely,

PARTS iD maintained the same commercial impression that "ID" is its distinct,

identifying element in the automotive space.  *Id.*  Just as the distinct "CAR" and "ID" parts of the logo image would visually indicate to a consumer that PARTS iD's source identifiers included each of these visual elements, the separate inclusion of "CAR" and "ID" in the Keywords and ALT Attribute perform a similar function for the benefit of the search engines, though textual instead of visual.  *Id.*  This search engine optimization strategy is intentionally using both "CAR" and "ID" to differentiate its contents from the others in the automotive space.  *Id.*

c.   This coding and commercial impression presented to the search engines remained consistent through the present:

| November 29, 2013 |  | Ex. 6, p. 12 |
|---|---|---|
| Present | | Ex. 6, p. 13 |

```
▼<div class="nav-logo-holder">
    <span class="left-menu-icon js-hamburger" data-toggle-class="left-panel-show"
    data-vehicle-garage-id="15" data-vehicle-id="15" data-store-id="0" data-flag-src=
    "/flag-icons/US-small.svg" data-has-mmy="1"></span>
    <a class="head-logo-a -carid " href="/">CAR ID</a> == $0
```

Ciappina Decl., ¶28; Bradford Decl., Ex. 3, Shoemaker Rep., ¶31.

> 4.     Deny.  *See* Response to Disputed Fact 3.

> 5.     Admit.

> 6.     Deny as worded.  U.S. Reg. No. 5,658,672 tacks to PARTS iD's use of ID for the sale of car parts and accessories in June of 2009.  As depicted below, the original iD mark released March 10, 2009 was modified from an upper case "I" to a lower case "i" in June of 2009.  From that point forward, PARTS iD maintained the same ID Branding with imperceptible modifications that did not change the commercial impression.  Ciappina Decl., ¶¶8–10; Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶26–34.  The placement of the iD on a green field in 2013 and removal of the car in late 2013 did not change how the consumers and vendors viewed the mark.  *Id.*

March 21, 2009



June 14, 2009



October 12, 2009



November 16, 2009



January 2, 2013



June 3, 2013



November 29, 2013



A notice of deposition was issued to IDParts seeking a corporate designee on the subject of commercial impression of the above marks.  Bradford Decl., Ex. 7, p. 19.  IDParts objected and declined to present a witness on this subject.

**TOPIC NO. 46**

> *The commercial impression of purchasers of automotive parts and accessories provided by each of the Accused Marks and the Asserted Marks, including the commercial impression of purchasers of automotive parts and accessories of CARID and ID.*

> **RESPONSE NO. 46**

> IDParts objects to this topic as vague, ambiguous, indefinite, subject to different interpretations, and failing to designate with reasonable particularity the matter on which examination is requested as required by Fed. R. Civ. P. 30(b)(6).

> In light of these objections, IDParts will not provide a witness to testify about this topic.

**TOPIC NO. 47**

> *The differences between the Asserted Marks, if any, and the basis for claiming that the CARID mark provides a different commercial impression from other Asserted Marks.*

> **RESPONSE NO. 47**

> IDParts objects to this topic on the ground that PARTS iD rather than IDParts bears the burden of demonstrating that the CARID and ID Marks create the same commercial impression.

> In light of these objections, IDParts will not provide a witness to testify about this topic.

Bradford Decl., Ex. 7, p. 19.  The undersigned followed up with IDParts's counsel before the start of the deposition to confer regarding the decision to withhold a witness on this important topic.  Bradford Decl., Ex. 8, March 17, 2021 Email from Bradford to Strand.  By response email, IDParts's counsel stated that it would not be presenting a witness for examination as "IDParts does not have any other facts at this time."  Bradford Decl., Ex. 8, March 18, 2021 Email from Strand to Bradford.  Referencing the logos above from June 14, 2009 and November 29, 2013, IDParts ultimately expressed no opinion on tacking such that IDParts should not be permitted to contest PARTS iD's evidence of tacking:

```
189:14          Q.   Okay.  Let me focus you again on the use
189:15 of "ID" in October of 2009.  What is the difference in
189:16 the font that is used in October of 2009 for the
189:17 letters ID as compared to the font used on
189:18 November 29, 2013?
189:19          MR. STRAND:  Objection.  Form.
189:20          A.   When I look at the font for those two
189:21 letters, they look -- color notwithstanding, one's
189:22 white, one's green, they look similar.  Those two
189:23 letters look similar.
189:24          Q.   (BY MR. BRADFORD)  And does it appear
189:25 that the differences in color on November 29, 2013,
190:01 the letters are white and placed in a field of green,
190:02 correct?
190:03          A.   It does appear that -- yes.
190:04          Q.   And that color green that is in that
190:05 field is roughly the same color as the color that was
190:06 used for the letters on October 12, 2009?
190:07          A.   Could be.
190:08          Q.   But you don't know whether or not?
190:09          A.   Not for sure, no.
190:10          Q.   In the automotive space, are you aware of
190:11 whether or not a consumer would view this as the same
190:12 mark in 2009 as used in 2013?
190:13          A.   I am not aware of that.
190:14          Q.   You wouldn't be able to express an
190:15 opinion one way or the other on whether or not the
190:16 mark used on October 12, 2009, imparts the same
190:17 commercial impression as the one that is used on
190:18 November 29, 2013?
190:19          A.   Are you asking me my opinion or a
190:20 consumer's opinion?
190:21          Q.   I'm asking do you have an opinion on
190:22 whether or not a consumer would conclude that the mark
190:23 used on October 12, 2009, provides the same overall
190:24 commercial impression as the one used in the
190:25 automotive space on November 29, 2013?
191:01          MR. STRAND:  Objection.  Form.
191:02          A.   I don't have an opinion on that.  I don't
191:03 know what a consumer would conclude.
```

7.    Admit.

8.      Admit subject to the additional facts alleged in Paragraphs 1–7. Specifically, PARTS iD first used iD in 2009 as demonstrated above, which is consistent with the file wrapper for U.S. Reg. No. 5,804,750.  Ciappina Decl., *supra*; Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶35–40.

9.      Admit.

10.     Admit subject to the facts provided in response to facts 1–8. Specifically, PARTS iD first used iD in 2009 as demonstrated above, which is consistent with the file wrapper for U.S. Reg. No. 6,096,254.  Ciappina Decl., *supra*; Bradford Decl., Ex. 4, Pokotilow Rep., ¶¶35–40.

11.     Admit that PARTS iD does not own federal trademark registrations apart from US. Registration Nos. '672, '750 and '254.  PARTS iD owns the common law rights to its ID branding dating back to March of 2009.

12.     Deny.  PARTS iD admits that it asserted Paragraph 79 of the Complaint against IDParts.  PARTS iD denies that the "opposite is true," which is an argument rather than a factual assertion.  By way of example, IDParts contested the likelihood of confusion standard by testifying that IDParts and PARTS iD are not competitors, do not sell the same products, do not share the same customers, and do not share the same vendors.  Bradford Decl, Ex. 1, Evans Depo., pp. 29–32, 106–07, 152–54; Ex. 2, Noble Depo., pp 86–89, 159–60.

**PARTS iD'S ASSERTION OF ADDITIONAL MATERIAL FACTS**

13.     In October of 2009, TDIParts's president Peter Noble received a cease and desist letter from Volkswagen directing that he cease the use of Volkswagen's famous trademark for diesel products: TDI.  Bradford Decl., Ex. 42 to Noble Depo.  The correspondence detailed for distinct areas of infringement and directed that TDIParts cease the use of TDI in all respects immediately.  *Id.*

14.     Before selection of IDParts as their new name in December of 2009, Mr. Noble and Mr. Evans did no research to determine if ID was in use by others in the automotive space, particularly for the online retail and wholesale sale of automotive products.  Bradford Decl., Ex. 2, Noble Depo., pp. 134:04–138:15.  They simply looked to see if there was another diesel company using ID.  *Id.*

15.     IDParts is a pure online retailer and wholesaler of diesel products for European diesel engines and select American diesel engines.  *Id.*

16.     IDParts has no federally registered trademarks.

17.     IDParts filed an application to register its  mark on October 3, 2014 in Appl. Ser. No. 86,414,309.  Bradford Decl., Ex. 10, p. 25.  IDParts asserted a First Use in Commerce date as at least as early as April 1, 2011.  *Id.*

18.     On July 19, 2019, the USPTO issued a non-final office action informing IDParts that registration of its  mark was refused due to a likelihood of confusion in the market between IDParts's  mark and PARTS iD's  mark, Reg. No. 5,658,672.  *Id.* at 2. IDParts failed to respond to the July 19, 2019 office action.  IDParts never asserted or advanced an argument before the USPTO that it had priority over PARTS iD's  mark.  *Id.* at 1.  On April 14, 2020, IDParts's Appl. Ser. No. 86,414,309 was deemed abandoned.  *Id.*

Dated: April 9, 2021                          Respectfully submitted,

                                             */s/ Aaron P. Bradford*
                                             Aaron P. Bradford, *Pro Hac Vice*
                                             Mishele Kieffer, *Pro Hac Vice*
                                             Nina P. Brewer
                                             BRADFORD, LTD

2701 Lawrence Street
Denver, CO 80205
(303) 325-5467
Aaron@apb-law.com
Mishele@apb-law.com
Nina@apb-law.com

*Attorneys for PARTS iD, LLC*
Daniel J. Cloherty (BBO #565772)
Christian G. Kiely (BBO #684308)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
dcloherty@toddweld.com
ckiely@toddweld.com

*Attorneys for PARTS iD, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2021 a true and correct copy of the foregoing **PARTS ID'S L.R. 56.1 STATEMENT OF FACTS IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was served via email on the following:

John Strand
jstrand@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210

*Counsel for IDParts LLC*


*/s/ Vonda Westlake*