**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

PARTS ID, LLC,

        Plaintiff,

v.

IDPARTS LLC,

        Defendant.

Civil Action No.  20-cv-11253-RWZ

IDPARTS LLC,

        Counterclaim Plaintiff,

v.

PARTS ID, LLC and PARTS ID, INC.,

        Counterclaim Defendants.

**IDPARTS' MEMORANDUM IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE
EXPERT TESTIMONY OF
ALLEN ADAMSON AND FRANK BUSCEMI**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

ARGUMENT ................................................................................................................................... 3

    I.  Legal Standard ................................................................................................................. 3

    II.  Mr. Adamson and Mr. Buscemi's Testimony Should Be Excluded ............................... 4

        A.  Opinions That CARID and ID Alone Have The Same Commercial Impression Because Consumers Would Believe They Come From The Same Company Should Be Excluded As Irrelevant, Speculative, and Unreliable Under Fed. R. Evid. 702 and As Prejudicial Under Fed. R. Evid. 401-403 ............. 4

            1.  PARTS iD's Experts Erroneously Rely On The Test For Likelihood Of Confusion, Which is Not The Test for "Tacking" ....................................... 7

            2.  PARTS iD's Experts' Analysis Is Fundamentally Flawed And Unreliable For Tacking Purposes In View of Admissions That Commercial Impression Is Source Identifying ................................................. 7

        B.  The *Ipse Dixit* Opinions of Mr. Adamson And Mr. Buscemi Are Inadmissible Because They Failed To Take Into Account *Any* Evidence To Demonstrate Consumer Perception, Particularly As of 2013 ....................................................... 10

        C.  Mr. Adamson and Mr. Buscemi's Testimony Should Be Excluded As Unreliable Under Fed. R. Evid. 702 And Cumulative of Each Other .................... 13

CONCLUSION .............................................................................................................................. 18

## TABLE OF AUTHORITIES

**CASES**

*American Paging Inc. v. American Mobilphone Inc.*,
1989 WL 274416 (T.T.A.B. Nov. 15, 1989) ................................................................. 9

*Boston Duck Tours, LP v. Super Duck Tours, LLC*,
531 F.3d 1 (1st Cir. 2008) ............................................................................................. 6

*Brookfield Communications v. West Coast Entertainment Corp*,
174 F.3d 1036 (9th Cir. 1999) ...................................................................................... 5

*Corporate Fitness Programs v. Weider Health and Fitness*,
2 USPQ2d 1682 (TTAB 1987) ..................................................................................... 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) .............................................................................................. passim

*De Boulle Diamond & Jewelry, Inc. v Boulle, Ltd.*,
No. 3:12-cv-1462, 2015 WL 12698060 (N.D. Tex. Jan. 21, 2015) ............................. 11

*Earley Information Science, Inc. v. Omega Engineering, Inc.*,
2021 WL 5868249 (D. Mass. Dec. 10, 2021) ............................................................. 13

*First Sav. Bank, F.S.B. v. First Bank System, Inc.*,
902 F. Supp. 1366 (D. Kansas 1995) ............................................................................ 5

*GE v. Joiner*,
522 U.S. 136 (1997) ...................................................................................................... 3

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997) .................................................................................................... 11

*Hana Fin., Inc. v. Hana Bank*,
574 U.S. 418 (2015) .............................................................................................. passim

*Iconics, Inc. v. Massaro*,
266 F. Supp. 3d 461 (D. Mass. July 19, 2017) ........................................................... 11

*Ilco Corp. v. Ideal Sec. Hardware Corp.*,
527 F. 2d 1221 (C.C.P.A. 1976) ................................................................................... 8

*International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries, Inc.*,
544 F.2d 105 (2d Cir. 1976) ........................................................................................ 17

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137, (1999) ..................................................................................................... 3

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) ................................................................................................ 4

*Mattei v.* Medeiros,
320 F. Supp. 3d 231 (D. Mass. June 13, 2018) ................................................................. 17

*Milward v. Rust-Oleum (Milward II)*,
820 F.3d 469 (1st Cir. 2016) ............................................................................................... 3

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*,
657 F.2d 482 (1st Cir. 1981) ............................................................................................... 7

*Polo Fashions, Inc. v. Extra Special Products, Inc.*,
451 F. Supp. 555 (S.D.N.Y. 1978) ..................................................................................... 5

*Pro–Cuts v. Schilz–Price Enters. Inc.*,
1993 WL 266611 (T.T.A.B. 1993) ..................................................................................... 6

*Samaan v. St. Joseph Hosp.*,
670 F.3d 21 (1st Cir. 2012) ............................................................................................... 11

*Smith v. Jenkins*,
732 F.3d 51 (1st Cir. 2013) ............................................................................................... 11

*SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*,
188 F.3d 11 (1st Cir. 1999) ............................................................................................... 11

*The Wet Seal, Inc. v. FD Mgmt., Inc.*,
2007 WL 458529 (T.T.A.B. Feb. 9, 2007) ......................................................................... 5

*Tovey v. Nike, Inc.*,
No. 1:12CV448, 2014 WL 3510636 (N.D. Ohio July 10, 2014) ................................. 11, 12

*Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*,
926 F.2d 1156 (Fed. Cir. 1991) ................................................................................... 5, 7, 9

*WCVB–TV v. Boston Athletic Ass'n*,
926 F.2d 42 (1st Cir.1991) ................................................................................................. 7

**RULES**

Fed. R. Evid. 401-403 ........................................................................................................ 10

Fed. R. Evid. 403 .............................................................................................................. 17

Fed. R. Evid. 702 .................................................................................................... 1, 3, 4, 13

## INTRODUCTION

Defendant IDParts, LLC ("IDParts") respectfully moves to exclude the testimony and opinions of Plaintiff PARTS ID, LLC and Counterclaim-Defendant PARTS ID, INC. (collectively "PARTS iD" or "Plaintiff")'s experts Mr. Allen Adamson and Mr. Frank Buscemi as unreliable and inadmissible pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence.

Most of this case boils down to a simple question: Who, between Plaintiff PARTS iD and Defendant IDParts, first used the mark ID alone for automotive parts? IDParts was first to use the mark ID alone for automotive parts in 2010 and Plaintiff alleges a first use of the mark ID alone (*i.e.,* with no modifier such as "CAR") in 2013. In an effort to predate IDParts' first use of ID alone, PARTS iD relies on the doctrine of tacking, to "tack" the priority date of its mark CARID from 2009 to the mark ID alone. In order to "tack," PARTS iD must prove that ordinary consumers believe CARID to be "legal equivalents," meaning that the two marks "'create the same, continuing commercial impression' so that consumers 'consider both as the same mark.'" *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015) (citation omitted).

Rather than conduct any consumer surveys or submit any evidence of what "consumers" would consider, PARTS iD instead resorts to serving three almost identical reports from marketing experts—all reaching the same conclusion that the mark CARID and ID alone have the same commercial impression because "a consumer would conclude that they are associated with the same eCommerce company that sells automotive parts."[1] However, both experts' opinions—which

---

[1] Ex. A, Adamson Report, at pg. 1; Ex. B, Buscemi Report, ¶ V.3; *see also*, Ex. C, Kfuri Report, Conclusions, at pg.19. After serving its initial report, and after IDParts objected to the identical nature of all three reports, PARTS iD informed IDParts that it did not intend to rely on the testimony of Dr. Kfuri.

are identical in nature and many times use whole paragraphs clearly copied from each other—are not only cumulative and unreliable, but lack foundation, and are flawed and irrelevant as they both answer the wrong question with their *ipse dixit* speculation.

*First,* Mr. Adamson and Mr. Buscemi opine that the marks CARID and ID alone purportedly have the "same commercial impression" because a consumer would conclude that the marks are associated with the same company. However, that question is irrelevant here—if anything, it relates to the test for *likelihood of confusion and infringement* which courts have uniformly found is ***not*** the test for tacking. Rather, "two marks may be tacked when the original and revised marks are 'legal equivalents.' This term refers to two marks that 'create the same, continuing commercial impression' ***so that consumers 'consider both as the same mark*.'"** *Hana Financial, Inc. v. Hana Bank*, 574 U.S. 418, 421 (2015) (citations omitted).[2] By answering a question that will not be put to the jury, and is indeed *irrelevant* to the question the jury will be answering, would allow Messrs. Adamson and Buscemi to confuse the jury.

And then to further confuse the jury, both experts conceded that on the actual question before the Court, CARID on the one hand, and ID alone, on the other, are "different marks," conclusively demonstrating the unreliability and confusing nature of their proffered testimony.[3]

*Second,* Mr. Adamson and Mr. Buscemi's purported opinions are unreliable because they fail to include any data or evidence that, as viewed by consumers in 2013, the commercial impression of the mark ID alone is the same as that of the mark CARID. Instead, the experts'

---

[2] Emphases are added throughout, unless otherwise noted.

[3] *E.g.,* Ex. E, Depo. Tr. F. Buscemi (105:19-106:4:2) ("A: Yeah, my – my impression is that they are related marks from the same company. Q: Not that they're the same mark? A: No, that's not – not the intent. They're not the same mark. They're – one has the word CAR in front of it, one has ID. They're – ***they're absolutely different marks***, but the commercial intent is that they're from the same company, same entity, same brand. So, to me, they're – they're related marks.").

justification for their opinions is simply this: because they say so. However, conclusions that are supported only by the *ipse dixit* of the expert are excludable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157, (1999), quoting *GE v. Joiner*, 522 U.S. 136, 146 (1997) (stating "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Without any evidence, the Court should exclude Mr. Adamson and Mr. Buscemi's unsupported and speculative opinions.

*Third,* if the Court is not inclined to exclude these experts, it should at least preclude one of them as their testimony is entirely cumulative, and therefore, unfairly prejudicial and it would be a waste of judicial resources to allow both witnesses to testify.

**ARGUMENT**

**I.     LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence provides that an expert may testify if  "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 assigns "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the testimony is admissible. *Id.* at 591, n.10, *see also*, Fed. R. Evid. 702, Advisory Committee Notes, *see also Milward v. Rust-Oleum (Milward II)*, 820 F.3d

- 3 -

469, 473 (1st Cir. 2016) ("The party seeking to introduce the evidence has the burden of establishing both its reliability and its relevance.").

An opinion that is speculative or conjectural does not satisfy Rule 702. *See Daubert,* 509 U.S. at 590 ("[K]nowledge connotes more than subjective belief or unsupported speculation."). Thus, "proffered expert testimony should be excluded if it is speculative or conjectural"; in fact, "admission of expert testimony based on speculative assumptions is an abuse of discretion." *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 311 (2d Cir. 2008) (internal quotations and alterations omitted). Similarly, conclusory opinions, or *ipse dixit*, fail to provide a methodology that would allow a court to assess reliability and should be excluded on that basis. *Id.* (internal citation omitted).

## II.   MR. ADAMSON AND MR. BUSCEMI'S TESTIMONY SHOULD BE EXCLUDED

### A.   Opinions That CARID and ID Alone Have The Same Commercial Impression Because Consumers Would Believe They Come From The Same Company Should Be Excluded As Irrelevant, Speculative, and Unreliable Under Fed. R. Evid. 702 and As Prejudicial Under Fed. R. Evid. 401-403

Both Mr. Adamson and Mr. Buscemi express the opinion that CARID and ID have the "same commercial impression" because a consumer would conclude that they are associated with the same company.[4]

The relevant test for "tacking," however, is ***not*** whether consumers would believe they are doing business with the same company, nor is it whether the "branding" or "brand identity history"

---

[4] Ex. A, Adamson Report, Introduction, at pg.1 ("I am of the opinion that the below marks have the same commercial impression such that a consumer would conclude that they are associated with the same eCommerce company that sells automotive products."); *see also* Ex. B, Buscemi Report, at pg. 11 ("It is my opinion that the below marks impart the same commercial impression such that a consumer from 2009 would believe that they are doing business with the same company when the [sic] return in 2013 or thereafter.").

is the same, to which Mr. Adamson testified.[5] Instead, PARTS iD must meet an "exceedingly strict" burden in proving that *the two marks,* from the perspective of an "ordinary consumer" are "legal equivalents" or "indistinguishable" from one another such that they create the same continuing commercial impression, and that they are not materially different from each other so that consumers "**consider both as the same mark**." *Hana Fin., Inc. v. Hana Bank,* 574 U.S. 418, 422 (2015) (citation omitted); *Brookfield Communications v. West Coast Entertainment Corp*, 174 F.3d 1036, 1048 (9th Cir. 1999) (tacking is allowed when "the two marks are so similar that consumers generally would regard them as essentially the same.")[6]

Putting aside that PARTS iD's expert testimony is hardly from the perspective of an "ordinary consumer" and do not consider any relevant evidence from 2013 besides the parties' respective websites—which the jury is well able to do—both experts failed to consider whether consumers would perceive the mark ID alone to be the same mark as CARID.[7] Indeed, their

---

[5] Ex. D, Depo. Tr. A. Adamson (25:9-27:2).

[6] *See Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1160 (Fed. Cir. 1991) (finding that acquired trademark "CLOTHES THAT WORK. FOR THE WORK YOU DO" was not the legal equivalent of Plaintiff's mark "CLOTHES THAT WORK" for the purposes of tacking) other holdings abrogated by *Hana Fin., Inc.*, 574 U.S. 418; *The Wet Seal, Inc. v. FD Mgmt., Inc.*, 2007 WL 458529, at *5-6 (T.T.A.B. Feb. 9, 2007) (citation omitted) (standard for tacking is "very strict" and is permitted only in "rare cases"; holding ARDENBEAUTY cannot be tacked on earlier use of mark ELIZABETH ARDEN); *Polo Fashions, Inc. v. Extra Special Products, Inc.,* 451 F. Supp. 555, 560-561 (S.D.N.Y. 1978) (a change from the mark MARCO POLO to POLO was held to convey a different commercial impression because of the very different connotation of the word "Polo"); *Corporate Fitness Programs v. Weider Health and Fitness*, 2 USPQ2d 1682 (TTAB 1987) (Board rejected attempt to "tack" applicant's earlier mark "SHAPE UP" to later mark "SHAPE"); *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 902 F. Supp. 1366 (D. Kansas 1995) (finding that plaintiff could not tack FIRSTBANK onto its prior use of FIRST NATIONAL BANK).

[7] Ex. D, Depo. Tr. A. Adamson (103:19-21) ("[c]onsumers don't look at marks, they look at net impressions. Marks are designed to communicate a commercial impression."); *see also* Ex. E, Depo. Tr. F. Buscemi (21:20-22) ("I'm not one that buys a lot of car parts. I work in the industry I, but I'm not technically their customer."). Mr. Adamson testified that in his opinion it is not a relevant question whether or not consumers considered the two marks to be the same. Mr.

scripted stance that the question that is at the heart of this dispute is not relevant, coupled with their admissions that CARID and ID alone are "different marks" and that dropping CAR from the mark "alters the mark,"[8] demonstrates the irrelevance and unreliability of this purported expert testimony.

Specifically, Mr. Adamson testified that he "*was not asked anything about the trademark,*" but instead about "branding," which he defined as "the name and identity logo treatment of that name to make it different and relevant to customers."[9] Moreover, Mr. Adamson also testified on multiple occasions that he did not believe it to be a relevant question whether consumers considered CARID to be the same mark as ID or that the two marks are "indistinguishable" from one another, concluding that removing the word CAR "changes the graphic style in a way that's not relevant to it's [sic, 'its'] commercial impression."[10] However, the law is directly contrary to Mr. Adamson's "strong opinion."[11] *See Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 29 (1st Cir. 2008) ("Even if elements of each party's mark overlap, or are visually similar, the marks as a whole may still create a distinct commercial impression, especially if the similarities are limited to generic or descriptive elements."); *Pro–Cuts v. Schilz–Price Enters. Inc.*, 1993 WL 266611, at *4 (T.T.A.B. 1993) (PRO-CUTS design mark cannot be tacked on earlier PRO-KUT design mark). The experts' failure to consider the "trademark" and belief that the question that is the heart of this dispute is allegedly irrelevant

---

Adamson's opinions are contrary to Supreme Court precedent and should be excluded. *Hana Fin., Inc.*, 574 U.S. 422.

[8] Ex. D, Depo. Tr. A. Adamson (114:5-11); Ex. E Depo. Tr. F. Buscemi (75:9-15, 100:1-11).

[9] Ex. D, Depo. Tr. A. Adamson (34:19-35:6) (emphasis added).

[10] Ex. D, Depo. Tr. A. Adamson (114:3-13).

[11] Ex. D, Depo. Tr. A. Adamson (114:13).

demonstrates the fatal flaws in their proposed testimony. Accordingly, the Court should grant IDParts' motion.

### 1. PARTS iD's Experts Erroneously Rely On The Test For Likelihood Of Confusion, Which is Not The Test for "Tacking"

PARTS iD's experts have applied the wrong test because whether a consumer would view two marks as coming from the same source is the test for "likelihood of confusion;" not the test for "tacking." *See WCVB–TV v. Boston Athletic Ass'n*, 926 F.2d 42, 44 (1st Cir.1991) ("Trademark law prohibits the unauthorized use of ... a mark, but *only* where doing so creates a 'likelihood of confusion' about who produces the goods or provides the service in question.") (emphasis in original); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 490 (1st Cir. 1981) ("Confusion over the nature of the parties' business relationship may be as objectionable for purposes of trademark infringement as is confusion between their goods."); *see also Van Dyne-Crotty, Inc. v. Wear-Guard Corporation,* 926 F.2d 1156, 1159 (Fed. Cir. 1991) ("As the Board correctly noted, the standard of legal equivalence used in reviewing efforts to 'tack' the prior use of one mark onto that of another is higher than that used in evaluating two competing marks. … ***for the purposes of 'tacking,' even if the two marks are confusingly similar, they still may not be legal equivalents***.") (citations omitted), other holdings abrogated by *Hana Fin., Inc*., 574 U.S. 418.   The Court should exclude their opinions and testimony.

### 2. PARTS iD's Experts' Analysis Is Fundamentally Flawed And Unreliable For Tacking Purposes In View of Admissions That Commercial Impression Is Source Identifying

The fact that both experts have admitted that the marks CARID and ID alone are different renders their proposed testimony completely irrelevant and unreliable for the purposes of establishing "commercial impression" for tacking purposes. Specifically, Mr. Adamson testified as follows:

Q: Do you see the ID mark and the CARiD mark?

A: Yes, I do.

Q: They are featured together on the website; is that right?

A: I don't recall where I got that screengrab from, but in that exhibit, I put them together or they were together.

Q: So they would be two separate marks, correct?

A: In that case, they are two separate marks, that is correct.

Q: They're different marks, aren't they:

A: They both contain the core differentiation ID, which is the relevant part of the brand – branding that matters.

Q: But they are different marks, correct?

A: ***They are different marks, correct.***

Ex. D, Depo. Tr. A. Adamson (61:17-62:12); *id.* (105:2-6) ("But my question is, are these marks the same? . . . of course they're not the same. . . .").

Similarly, Mr. Buscemi also acknowledged that the marks CARID and ID alone are different "by definition" and "semantically" and "not the same" and that dropping CAR "alters the mark."[12]

PARTS iD's efforts to draw a line between the "mark" and the "brand" demonstrate the unreliability of PARTS iD's expert opinions because what matters for tacking purposes is not the "brand," but the mark, as the test calls for "legal equivalence" between the two marks. *See Ilco Corp. v. Ideal Sec. Hardware Corp.*, 527 F. 2d 1221, 1224-25 (C.C.P.A. 1976) (finding that user of the mark HOME PROTECTION CENTER was not entitled to rely on prior use of HOME

---

[12] Ex. E, Depo. Tr. F. Buscemi (72:6-73:1 and 95:3-21); *see id.* at (75:9-15) ("Q. By dropping CAR, aren't you altering the mark? A.  You're altering the mark, but you're not altering the brand.  You're altering the mark only for visual and recognition purposes or space and use purposes, but you're not changing the contextual meaning of it.").

PROTECTION HARDWARE "because commercial impression is gauged by the impact on the public" and the marks would carry different commercial impressions because they signified different goods); *see also American Paging Inc. v. American Mobilphone Inc.*, 1989 WL 274416, 3-4 (T.T.A.B. Nov. 15, 1989) (holding that AMERICAN MOBILPHONE and design was not the legal equivalent of AMERICAN MOBILPHONE PAGING and design, where AMERICAN MOBILPHONE PAGING and design was more informative of the services). Certainly, the contextual meaning is irrelevant to the tacking inquiry that is focused strictly on the legal equivalents between the marks themselves. *Hana Fin., Inc.*, 574 U.S. 418; *see also Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991) ("It does not appear that the Board entertained any evidence concerning the legal equivalence of these two marks except for the visual or aural appearance of the marks themselves. However, no more was necessary.").

Indeed, Mr. Buscemi's analogies to other brands highlight the fundamental flaw in PARTS iD's experts' analyses: that is, consumers of course can associate many different marks with a "brand," but that doesn't mean that the marks will always have the same "commercial impression" for the purposes of tacking:

> Q: A consumer would see the Jumpman logo [shown below at left] and they would know, hey, that's Nike, right?
>
> A: Consumers within that specific segment would, yes.
>
> Q: And the Nike Swoosh [shown below at right], that's also part of the Nike brand, right?
>
> A: Yes.
>
> Q: They would see that – consumers would see that and know, hey, those goods are from Nike, right?
>
> A: Correct. Yes.
>
> Q: ***Are the Swoosh and the Jumpman logo the same mark?***

A: ***Absolutely not.***

Q: ***But they have the same commercial impression, right?***

A: ***Yes, they do.***" [13]

  [14]

As Buscemi admits and any consumer would recognize, the Nike Swoosh and Jumpman logo are different marks. But Buscemi's argument that they have the "same commercial impression" shows he simply does not understand the test for "commercial impression" the Courts use to evaluate tacking. *See* Section II.A. Allowing the "experts" to testify that a consumer "might" conclude that the CARID mark identifies the *same source* as the ID mark alone (*i.e.*, if owned by different companies, there would be a "likelihood of confusion between the two"), and that the two marks have the same "commercial impression" under PARTS iD's experts' definition, will only lead to the jury being confused and misled. PARTS iD's expert opinions and testimony are unreliable and should be excluded under both *Daubert* and Fed. R. Evid. 401-403 as prejudicial.

B.      The *Ipse Dixit* Opinions of Mr. Adamson And Mr. Buscemi Are Inadmissible Because They Failed To Take Into Account *Any* Evidence To Demonstrate Consumer Perception, Particularly As of 2013

Mr. Adamson and Mr. Buscemi's testimony should be excluded as lacking a reliable foundation. Both experts take the conclusory view—unsupported by any consumer evidence— that a consumer encountering the CARID mark would notice the ID first.[15] There is no

---

[13] Ex. E, Depo. Tr. F. Buscemi (143:9-24); *See also* Ex. E, Depo. Tr. F. Buscemi (70:7-21); Ex. E, Depo. Tr. F. Buscemi (73:10-24), (74:1-75:8).

[14] Images copied from <www.nike.com/jordan>.

[15] Ex. D, Depo. Tr. A. Adamson (83:6-9); *see also* Ex. E, Depo. Tr. F. Buscemi (18:20-19:3).

methodology or analysis by either expert to support their speculative *ipse dixit* opinions. *Smith v. Jenkins*, 732 F.3d 51, 67 (1st Cir. 2013) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." (*quoting General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

When conducting an expert analysis, there must be an adequate fit between the expert's methods and conclusions, such fit "entails an examination of his conclusions to determine whether they flow rationally from the methodology employed." *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 32 (1st Cir. 2012); *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st Cir. 1999) ("[A]n expert must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession."); *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 469 (D. Mass. July 19, 2017) ("An expert is responsible for ensuring that his opinion is based on reliable data; he may not blindly rely on his client's representations").   In a trademark context, there needs to be a "linkage" between an expert's experience and their opinions on issues relating to consumer impressions. *See e.g.*, *Tovey v. Nike, Inc.*, No. 1:12CV448, 2014 WL 3510636, at *8–9 (N.D. Ohio July 10, 2014) (the failure to articulate a reliable connection between an expert's experience and her conclusion regarding consumer confusion resulted in exclusion of the expert's opinion and testimony on the issue of confusion as speculative); *see also De Boulle Diamond & Jewelry, Inc. v Boulle, Ltd.*, No. 3:12-cv-1462, 2015 WL 12698060, at *2 (N.D. Tex. Jan. 21, 2015) (excluding opinion on likelihood of confusion opinion premised on experience where the proponent presented no evidence that the "testimony is reliable or comprised of more than his own ipse dixit conclusions").

Here, there are no consumer surveys, no documents, or testimonial evidence about consumer opinions—no analysis of any sort—just the experts' off-handed conclusion that "you can test things using consumers surveys, but consumer surveys do not always give you accurate information." *See* Ex. D, Depo. Tr. A. Adamson (60:3-13, 47:2-16); s*ee also* Ex. E, Depo. Tr. F. Buscemi (109:13-110:12) ("Q:  Did you do anything to determine exactly what it is consumers would view when considering the mark CARID? A: Not at the time, no. Q: When you say 'not at the time," what do you mean by that? A: I – *I didn't conduct any brand studies or brand awareness or brand sentiment studies at that time so I – I can't tell.*").[16]

These hired witnesses offer nothing more than their subjective conclusions based upon their preordained view of the facts and not upon anything but the most abstract principles of consumer conduct. Neither "expert" provides any reason to believe that a consumer would perceive CARID to be the same as ID or that a consumer would believe CAR to be generic. Without any clear support for how their opinions were derived in this matter, Mr. Adamson and Mr. Buscemi ask the jury to accept their opinions simply because they say so.  The Court should exclude their opinions as there is simply no reliable linkage between Mr. Adamson or Mr. Buscemi's opinions and their purported experience.  *See Tovey*, 2014 WL 3510636, at \*8–9 (excluding consumer marketing expert with years of experience from testifying on issue of consumer impression/confusion because of speculative and *ipse dixit* nature of opinions).

Moreover, in an effort to get the "experts" to adopt its litigation position, PARTS iD cherry-picked documents that the experts blindly relied upon, making their testimony unreliable. Neither

---

[16] Ex. E, Depo. Tr. F. Buscemi (130:9-131:18) (Q: *So there are a lot of different ways to determine customer sentiment*? A: Yes. Q: And were any of those ways used here to determine customer sentiment when it comes to the ID mark alone versus the CARiD mark? A: I don't know.  Q: You did not conduct any; is that right?  A: *We did not.  We were not hired to do so*.)

expert requested any specific materials[17] or inquired whether there were documents that would demonstrate what consumers thought of the marks.[18]

The necessary indicia of reliability required under *Daubert* simply has not and cannot be shown here. *See Earley Information Science, Inc. v. Omega Engineering, Inc.*, 2021 WL 5868249 (D. Mass. Dec. 10, 2021) (excluding Defendant's expert because the report was not the product of reliable principles and methods in accordance with *Daubert* and Rule 702 where expert "offered no basis for that methodology, other than that it is generally derived from his 20 years of experience in the industry."). The Court should exclude Mr. Adamson and Mr. Buscemi's speculative opinions.

> **C.    Mr. Adamson and Mr. Buscemi's Testimony Should Be Excluded As Unreliable Under Fed. R. Evid. 702 And Cumulative of Each Other**

Should the Court be inclined to permit these experts to testify, IDParts respectfully requests that the Court limit this testimony to one expert on the grounds that the experts are cumulative of each other. Rather than submit any evidence of how "consumers" perceived the mark CARID to be in 2013, PARTS iD instead hired three experts, each provided reports which are almost identical in their analysis and conclusions, all opining that the "ID" part of the mark CARID operates as a brand, and insisting that consumers would believe ID alone to have the same source as the mark CARID. IDParts does not include Dr. Kfuri's opinions in this motion, as

---

[17] Buscemi did testify that he asked for customer retention rates and what PARTS iD had done to grow the brand.

[18] *E.g.,* Ex. D, Depo. Tr. A. Adamson (68:20-69:4) ("I did not ask any questions directly.  I just reviewed the materials provided. . . . I did not ask for additional materials.  I just reviewed the materials that were provided with the briefing documents."), (46:21-47:1) ("Q: Did you review anything that was provided to you that would've told you what a consumer may have believed about the ID brand? A: No, I don't recall seeing any consumer data to that end."); Ex. E, Depo. Tr. F. Buscemi (111:17-21) ("Q: So you didn't review any internal documents from PARTS iD that would tell you that consumers looked at the ID mark to identify the company, did you. A: No, I did not, and I – I wasn't asked to."), (163:23-164:11).

PARTS iD's counsel has agreed not to call Dr. Kfuri in this matter. However, IDParts relies on Dr. Kfuri's report to demonstrate that the expert reports in this matter were all suspiciously duplicative in nature—particularly in the actual text—as if they were dictated by the same person. It is curious that three different experts would each prepare reports which are almost identical in verbiage. For example, compare the extracts below, specifically regarding the key question of the importance of ID:

> 16.    Each of these brand tactics served the branding promise of helping consumers find the right product for their vehicle for the purpose of unlocking the car's true identity.  "ID" was at the center of the services that were being built at www.carid.com.

Ex. A, Adamson Report, Adamson Expert Report, ¶ 16.

> 16.    Each of these brand adjacent features served the branding promise or notion of helping consumers find the right product for their vehicle for the purpose of unlocking the car's true identity.  "ID" was at the center of the services that were being built at www.carid.com.

Ex. B, Buscemi Report, Exhibit 2, ¶ 16.

> 11.    Each of these brand adjacent features served the branding promise or notion of helping consumers find the right product for their vehicle for the purpose of unlocking the car's true identity.  "ID" was at the center of the services that were being built at www.carid.com.

Ex. C, Kfuri Report, ¶ 11.

- 14 -

Or one could look at these excerpts regarding PARTS iD's use of ID:

> 19.    Consistent with its branding since March 2009, Onyx built out a website that featured the notion of ID at every turn. While ID has no meaning within the automotive industry, Onyx's use of this brand and the brand adjacent features were all designed to sell and deliver upon the promise of helping the consumer find the right product for their needs. Below, you see the ID branding surrounded by a series of brand enforcing features such as the tag lines, searching tools, images and copy that re-enforce the branding promise of ID.

Ex. A, Adamson Report, ¶19.

> 19.    Consistent with its branding since March 2009, Onyx built out a website that featured the notion of ID at every turn. While ID has no meaning within the automotive industry, Onyx's use of this brand and the brand adjacent features were all designed to sell and deliver upon the promise of helping the consumer find the right product for their needs. Below, you see the ID branding surrounded by a series of brand enforcing features such as the tag lines, searching tools, images and copy that re-enforce the branding promise of ID.

Ex. B, Buscemi Report, Exhibit 2, ¶19.

> 13.    Consistent with its branding since March 2009, Onyx built out a website that featured the notion of ID at every turn. While ID has no meaning within the automotive industry, Onyx's use of this brand and the brand adjacent features were all designed to sell and deliver upon the promise of helping the consumer find the right product for their needs. Below, you see the ID branding surrounded by a series of brand enforcing features such as the tag lines, searching tools, images and copy that re-enforce the branding promise of ID.

Ex. C, Kfuri Report, ¶ 13.

Or, finally, this example in which the experts purportedly "independently" analyze PARTS iD's website:

- 15 -

> 41. From the above images, it Onyx remained committed to iD® as its central brand. The word "car" was selected to modify iD® as it was short and generic. As the focus of the initial eCommerce platform would be the sale of car parts, the use of "car" was not a differentiating word and placed proper emphasis upon iD as the predominant feature of the branding in the eye of the consumer and the eye of the search engines that direct traffic to this our platform.

Ex. A, Adamson Report, ¶ 41.

> 41. From the above images, it Onyx remained committed to iD® as its central brand. The word "car" was selected to modify iD® as it was short and generic. As the focus of the initial eCommerce platform would be the sale of car parts, the use of "car" was not a differentiating word and placed proper emphasis upon iD as the predominant feature of the branding in the eye of the consumer and the eye of the search engines that direct traffic to this our platform.

Ex. B, Buscemi Report, Exhibit 2, ¶41.

> 33. From the above images, one can conclude that Onyx remained committed to iD® as its central brand. The word "car" was selected to modify iD® as it was short and generic. As the focus of the initial eCommerce platform would be the sale of car parts, the use of "car" was not a differentiating word and placed proper emphasis upon iD as the predominant feature of the branding in the eye of the consumer and the eye of the search engines that direct traffic to the platform.

Ex. C, Kfuri Report, ¶ 33.

What is even more curious is that both Mr. Adamson and Mr. Buscemi testified that they independently drafted the reports from scratch. When asked "who wrote this report," Mr. Adamson testified "I drafted it and wrote it."[19] When asked if he was provided any part of the report by anybody else, Mr. Adamson stated, "[n]ope. All the content is mine." *Id.* (22:20-21). Similarly, when asked "[w]ho wrote this report," Mr. Buscemi stated "I did" admitting that he was provided

---

[19] Ex. D, Depo. Tr. A. Adamson (22:18-19).

with "some data" from others, but that he "wrote the report" and the parts of Exhibit 2 where he mentioned his understanding, reviews, and "the overview of each of the paragraphs."[20] Two opinions that appear verbatim are hardly reliable or independent; one would have to conclude that some third person dictated these passages to both experts.

In any event, to permit two experts to testify about the same thing would be a large waste of the parties' and Court's resources. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of …needlessly presenting cumulative evidence."); *Mattei v.* Medeiros, 320 F. Supp. 3d 231 (D. Mass. June 13, 2018) (finding that the trial judge's decision to limit cumulative testimony was reasonable); *see International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries, Inc.*, 544 F.2d 105 (2d Cir. 1976) (finding proposed testimony of plaintiffs' witness was properly excluded where it would have been cumulative). Accordingly, should the Court be inclined to allow these experts to testify, IDParts respectfully requests that the Court permit only one such expert to proceed.

---

[20] Ex. E, Depo. Tr. F. Buscemi (31:20-32:24). Mr. Buscemi included Exhibit 2 in his report, which contains portions that are nearly identical to Mr. Adamson's report. Although Mr. Buscemi admitted that the "exhibits were information that was provided to me . . . from counsel" he stated that he wrote "[e]verywhere that I mentioned my understanding, my reviews, the – you know, the overview of the paragraphs . . . ." claiming that he "drafted this exhibit [Exhibit 2] using information that was given to [him] . . . by counsel." Ex. E, Depo. Tr. F. Buscemi (33:9-34:10).

## CONCLUSION

For the foregoing reasons, Mr. Frank Buscemi and Mr. Allen Adamson should be precluded in the entirety from testifying as expert witnesses in this action.

Respectfully submitted,

Date: June 13, 2022

/s/ John L. Strand
John L. Strand (BBO # 654985)
Amanda B. Slade (BBO # 703951)
Quincy Kayton (BBO # 696797)
jstrand@wolfgreenfield.com
aslade@wolfgreenfield.com
qkayton@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
617.646.8000 Phone
617.646.8646 Fax

Tonia A. Sayour, *pro hac vice*
tsayour@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue
New York, NY 10158
212.697.7890 Phone
617.646.8646 Fax

Marc C. Laredo, (BBO # 543973)
laredo@laredosmith.com
LAREDO & SMITH, LLP
101 Federal Street, Suite 650
Boston, MA 02110
617-443-1100 Phone

*Counsel for IDPARTS LLC*

- 18 -

## **CERTIFICATE OF SERVICE**

       I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.


Dated: June 13, 2022

/s/ John L. Strand
John L. Strand