UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ID AUTO, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IDPARTS LLC,<br><br>　　　　Defendant.<br>_____<br>IDPARTS LLC,<br><br>　　　　Counterclaim Plaintiff,<br><br>　　v.<br><br>ID AUTO, LLC and ID AUTO, INC.,<br><br>　　　　Counterclaim Defendants. | * <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>* <br>Civil Action No. 20-cv-11253-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

　　Plaintiff and Counterclaim Defendants ID Auto, LLC and ID Auto, Inc. ("Plaintiff") and Defendant and Counterclaim Plaintiff IDParts LLC ("Defendant") sell parts for automobiles online.  See, e.g., [ECF No. 203 at 81:9–15; ECF No. 205 at 126:23–25].  Both parties alleged, among other things, that the other infringed its trademarks.  See [ECF No. 202 ("Verdict")].

Between November 14 and 20, 2023, the case was tried to a jury. [ECF Nos. 203–207].[1] On November 20, 2023, the jury returned a verdict in favor of Defendant on one of its trademark claims and found that the infringement was willful. [Verdict at 5–6]. The jury found that all other infringement claims asserted by both parties were not proven. [Id. at 2–5]. Now pending before the Court is Plaintiff's renewed motion for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50(b). [ECF No. 219]. For the reasons set forth below, Plaintiff's motion is DENIED.

## I.   STANDARD OF REVIEW

"A party seeking to overturn a jury verdict faces an uphill battle." Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005). "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Id. (quoting Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004)). In evaluating a motion for judgment as a matter of law, the Court must consider "the evidence presented to the jury, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the jury verdict." Osorio v. One World Techs. Inc., 659 F.3d 81, 84 (1st Cir. 2011) (quoting Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010)).

---

[1] The trial transcript appears at ECF Nos. 203–207, and the Court will refer to the transcript as follows: ECF No. 203 ("Day 2"); ECF No. 204 ("Day 3"); ECF No. 205 ("Day 4"); ECF No. 206 ("Day 5"); ECF No. 207 ("Day 6").

## II. BACKGROUND

### A. Evidence at Trial

The Court provides a brief summary of the facts that the jury could have found in support of its verdict here, and supplements the facts in the analysis below as necessary.

#### 1. The Parties

Plaintiff runs "CARiD[,] . . . an online automotive parts and accessories store." [Day 2 at 81:9–15]. It launched as a website in March 2009, [id. at 91:24–25], and sells "over 17 million unique products" for many types of vehicles and vehicle brands, including diesel vehicles, [id. at 146:25–147:23].

Plaintiff was originally run by an operating company called Onyx. See [Day 2 at 121:18–23]. In 2020, Onyx changed its name to PARTS iD. [Id. at 122:16–22]. Antonio Ciappina, Plaintiff's former CEO, [id. at 78:17–22], testified that they chose "PARTS iD" because it "aligned with the ID brand that we already have," [id. at 122:24–25]. He also testified that the name was selected after the inception of this lawsuit and that he and the company were "aware that the company IDParts existed when [they] selected the name PARTS iD." [Id. at 123:23–25, 163:6–164:1].[2] In Ciappina's view, use of that name was permissible because they "were the first to use the ID mark back in 2009[, they] had a variety of intellectual property registrations with the Trademark Office[,]" and "[f]or all intents and purposes, [they] owned the mark 'ID.'" [Id. at 123:23–124:7].

---

[2] The original complaint in this action was filed on June 30, 2020, by Onyx. [ECF No. 1]. On December 30, 2020, Plaintiff (then Onyx) filed an amended corporate disclosure statement stating that it had "merged into Parts iD, LLC, a Delaware limited liability company." [ECF No. 24]. Accordingly, Defendant counterclaimed that the PARTS iD mark infringed its IDPARTS mark, claiming that Plaintiff had been using the infringing mark since November 2020. [ECF No. 31 at 55].

Though PARTSiD.com is a "corporate information website" and not a website where consumers buy anything, [Day 2 at 79:17–24], the company was "representing [it]self as PARTS iD to [its] suppliers and vendors," [id. at 166:1–3].

Defendant IDParts, which specializes in "selling repair parts for diesel-powered vehicles," is owned by Peter Noble and Corey Evans. [Day 4 at 126:20–25]. It operates the website IDParts.com. [Id. at 127:13–15].

Defendant was originally called TDIParts, [Day 4 at 133:19–21], but changed its name to IDParts in 2009 when it received a letter from Volkswagen complaining that "TDI" was part of the brand name for one of its vehicles, [id. at 135:9–136:3]. At the time, they had not heard of CARiD or Onyx, and "CARiD's name or marks play[ed] . . . [a]bsolutely zero" role in the decision to select IDParts as its name. [Id. at 137:4–10].

### 2. The Parties' Claimed Trademarks

As relevant here, Plaintiff has two registered trademarks for different versions of "CARID." The first, Registration No. 3,711,746, was registered on November 17, 2009, and is the following:

### CARID

[Ex. 1]; see also [Verdict at 2]. The second, Registration No. 6,100,524, was registered on July 14, 2020, and is the following:

### CARiD

[Ex. 18]; see also [Verdict at 2].

Plaintiff also claimed that it owns a common law trademark for "CARID." See [Verdict at 2].[3] As early as 2009, Plaintiff used the following versions of the CARiD mark:



[Exs. 23, 24, 27]. As the images show, "iD" or "ID" was typically a different size, color, and font than the word "car." See [Exs. 23, 24, 27; Day 2 at 131:1–4 ("the company [was] putting emphasis on ID"); Day 3 at 38:14–17]. Plaintiff claimed at trial that its use of these images as early 2009 entitled it to a trademark in "iD" or "ID" standing alone. See [Verdict at 3].

In addition, as relevant here, Plaintiff has three registered trademarks for different versions of "ID," standing alone, which are the following:[4]

| Mark | iD | iD | iD |
|---|---|---|---|
| Registration No. | 5,658,672 | 5,804,750 | 6,096,254 |
| Registration Date | January 22, 2019 | July 16, 2019 | July 07, 2020 |

---

[3] For ease of reference, the Court refers to these marks collectively as the "CARiD" marks.

[4] [Exs. 16 (Reg. No. '750); 17 (Reg. No '672); 19 (Reg. No. '254)]; see also [Verdict at 4].

Ciappina testified Plaintiff was using "ID" as a "favicon," [Day 2 at 101:19–24],[5] as early as March 2009, [id. at 103:16–22], but the jury never actually saw any such favicon,[6] and Plaintiff's registration for ID as a standalone mark stated that it began using it "at least as early as April 1, 2011[,]" [Day 6 at 34:6–7].

Plaintiff's marketing expert, Frank Buscemi, testified that both "car" and "ID" are, or at least can be, generic terms. [Day 3 at 57:21–59:11]. He also testified, however, that "CARiD" and ID are different marks" and are visually distinct. [Id. at 60:4–6, 61:12–14, 62:14–15].

Defendant claims that it has a common law trademark for its logo, (id), which it began using around 2010, [Day 4 at 142:19–143:20, 183:3–10], as well as for IDParts, see [Verdict at 5]. With respect to the logo, Defendant adopted it to fit better onto, for example, a square space on its website or on a shirt because IDParts was "long." [Day 4 at 144:19–145:14]. It also chose the design in part because it looked like a European speed-limit sign, [id.], and customers sometimes identify the company as "ID," [id. at 185:13–17]; see also; [Day 5 at 96:12–19].

### 3. The Verdict

Three of the jury's findings are relevant for this motion. First, the jury found that neither Defendant's use of "IDParts" or its (id) logo infringed any one of the following three marks: (1) Plaintiff's common law "CARID" mark, (2) Plaintiff's registered "CARID" mark (U.S. Registration No. 3,711,746), or (3) Plaintiff's registered CARiD mark (U.S. Registration No.

---

[5] A favicon "is a small graphical image or icon typically used on a web browser when[,]" for example, "somebody gets multiple tabs open in their browser" so the user "can see the favicon shown [and] quickly see which tab is what website on [the] browser." [Day 2 at 101:19–24].

[6] Plaintiff appears to concede this in their motion by not arguing that the favicon was an example of earlier use. See [ECF No. 220 at 14–15].

6,100,524). [Verdict at 2]. Second, the jury found that Plaintiff had not proven that it owned a valid "iD" mark prior to Defendant owning its (id) logo. [Verdict at 3].[7] Finally, the jury found that Defendant had proven that Plaintiff infringed the "IDParts" mark based upon its use of "PARTS iD," [Verdict at 5], and that it had done so willfully, [id. at 6].

### B. Procedural History

The jury reached its Verdict on November 20, 2023. [Verdict]. Plaintiff filed the instant motion for JMOL on March 8, 2024. [ECF No. 219]. Defendant opposed the motion on March 22, 2024, [ECF No. 221], Plaintiff replied on April 3, 2024, [ECF No. 225], and Defendant filed a sur-reply on April 11, 2024, [ECF No. 232].

## III. DISCUSSION

### A. Plaintiff's CARiD Marks

Plaintiff first argues that the Court should grant JMOL on its claims that Defendant infringed its CARiD marks because, as relevant here, "[n]o reasonable jury could . . . not reach the conclusion that it [had] established a likelihood of confusion" between Defendant's "IDParts" name or (id) logo and Plaintiff's CARiD marks. See [ECF No. 220 at 1–14]; see also [Verdict at 2]. To succeed on a trademark infringement claim, a party "must demonstrate both that its mark merits protection and that the allegedly infringing use is likely to result in consumer confusion." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006). As to the second prong of the analysis,

---

[7] As such, the jury could not find that Defendant infringed the "iD" mark by using its (id) logo. See [Verdict at 3–4].

> [i]n assessing likelihood of confusion, courts have commonly looked to the following factors: the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark.

Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). The Court's instruction to the jury regarding likelihood of confusion, which Plaintiff does not take issue with, included the following language:

> You must consider all of these factors and you may also consider any other factors that you might think of to determine whether ordinary consumers would likely be confused as to the source, sponsorship, affiliation, or approval of the services being sold by the alleged infringer to decide whether there has been infringement and unfair competition or not.

[Day 6 at 63:25–64:5].

Viewing the facts "in the light most favorable to the jury verdict" and drawing "all reasonable inferences" in favor of the same, Osorio, 659 F.3d at 84, the Court finds that the jury could have applied the Pignons factors and reached the conclusion that there was not a likelihood of confusion between Plaintiff's CARiD marks and Defendant's "IDParts" name or (id) logo, see Marcano Rivera, 415 F.3d at 167. Among other reasons, first, the jury could have found that "CARid' and "IDParts" are not similar, and that even assuming the "ID" portion of Plaintiff's CARiD marks is dominant, Defendant's (id) mark does not look enough like the "ID" or "iD" in Plaintiff's CARiD marks. See Pignons, 657 F.2d at 487 (first factor: "similarity of the marks"). Second, the jury could have found that the goods were not similar where Plaintiff focused on selling accessories for all manner of vehicle, [Day 2 at 81:9–15 ("CARiD[,] . . . an online automotive parts and accessories store."); id. at 146:25–147:23 (CARiD sells "over 17 million unique products" for many types of vehicles and vehicle brands, including diesel

8

vehicles)], and Defendant focused on selling parts for diesel cars, [Day 4 at 126:23–25 (IDParts specializes in "selling repair parts for diesel-powered vehicles")]; see also Pignons, 657 F.2d at 487 (second factor: "similarity of the goods").  Third, the jury could have found that the channels of trade were "similar but not the same," [Day 2 at 137:6–9]; see also [id. at 173:3–7 (seventy percent of Plaintiff's revenue in 2022 was from "aftermarket accessories, such as interior and exterior accessories, custom wheels, performance products."); Day 5 at 41:4–20 (Defendant has never had "a primary focus" on accessories); id. at 73:15–22 (similar)]; and that Defendant was a "niche" and "very special part of the market," and CARiD's "focus is very different" and "not part of [Defendant's] competitive landscape," see [Day 4 at 165:19–166:15]; see also Pignons, 657 F.2d at 487 (third factor: "the relationship between the parties' channels of trade").  Fourth, the jury could have found that the parties' customers are similar but different, with Plaintiff's customers focusing on "customizing their vehicle and getting away from stock items" or "accessorizing and/or improving the performance of their vehicle," [Day 2 at 173:8–13], and Defendant's customers being "very technically savvy" and "mechanically focused" customers who drive diesel-powered cars, [Day 4 at 139:19–140:11]; see also Pignons, 657 F.2d at 487 (fifth factor: "the classes of prospective purchasers").  Fifth, the jury could have found that there was very little evidence of confusion given the parties' many years of co-existence.  [Day 2 at 161:9–162:13 (Plaintiff's former CEO testifying that he was made aware of one example of a consumer purchasing something from Defendant when they thought they were purchasing something from Plaintiff, but he could not identify other examples of confusion between the two parties); Day 4 at 167:13–168:13 (Defendant owner testifying that out of 500,000 company emails, "five or six" contained the word CARiD, and he had not received calls in which customers mentioned CARiD); Day 5 at 91:11–17 (Defendant owner testifying that out of

"hundreds of thousands, half a million" emails and calls prior to Onyx changing its name, there were "[v]ery few" instances in which a customer "contacted IDParts about a purchase they made from CARiD.")]; see also Pignons, 657 F.2d at 487 (sixth factor: "evidence of actual confusion"). Sixth, the jury could have found that "CARiD's name or marks play[ed] . . . [a]bsolutely zero" role in Defendant's decision to select IDParts as its name or its logo. See [Day 4 at 137:4–10]; see also Pignons, 657 F.2d at 487 (seventh factor: "intent in adopting its mark"). Finally, the jury could have found that the CARiD marks were not particularly strong based on the testimony of Plaintiff's expert to the effect that "car" and "ID" can both be generic terms, [Day 3 at 57:21–59:11], that were simply combined to make Plaintiff's name and logo here, Pignons, 657 F.2d at 487 (eighth factor: "strength of the plaintiff's mark"). In sum, there was ample evidence for the jury to reasonably find that seven of eight Pignons factors weighed against finding a likelihood of confusion, and that those factors outweighed the fact that, for example, the parties advertised in the same space, [Day 5 at 105:3–11]; Pignons, 657 F.2d at 487 (fourth factor: "the relationship between the parties' advertising"). Accordingly, the Court finds that the evidence supported the jury's Verdict on the alleged infringement of the CARiD marks, [Verdict at 2], and the Court denies Plaintiff's request for JMOL to reverse this Verdict.

**B.     Whether Plaintiff Owned a Valid "iD" Mark Prior to Defendant's** 

"The right to trademark and service mark rights is based on prior use, or the one who first uses the marks in connection with a peculiar line of business." Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 815 (1st Cir. 1987). Here, although Plaintiff did not register its stand-alone "ID" marks until 2019, see supra, it argues that "[t]here is no dispute that Plaintiff used the ID mark as part of the CarID mark starting in 2009," and that Defendant's

use of its logo infringed that mark, [ECF No. 220 at 14]. Plaintiff advances two arguments in support of this position: first, "ID" was "used . . . as a distinct part of a mark," namely CARiD, [id. at 15–18]; and second, that it "demonstrated ownership of the [stand-alone] ID mark based on the doctrine of tacking," [id. at 18–20].

With respect to the first argument, Plaintiff cites In re Chemical Dynamics, Inc., 839 F.2d 1569, 1571 (Fed. Cir. 1988) for the proposition that "[a] part of a mark is independently protectable where it creates a 'separate and distinct commercial impression, which thereby performs the trademark function of identifying the source of the merchandise to the customers.'" [ECF No. 220 at 15 (quoting Chem. Dynamics, 839 F.2d at 1571)]. On this issue, the Court provided the following instruction, which Plaintiff does not take issue with:

> A party may own rights and a portion of a mark as a portion of the CARiD mark if it creates a separate and distinct commercial impression. That is, the portion of the mark alone identifies the source of the services to customers. In other words, a party that registers a mark may claim separate ownership of a part of a mark but only if that portion of the mark performs the function of a service[ ]mark in and of itself, meaning that it comprises a separate and distinct mark in and of itself.

[Day 6 at 59:25–60:8].

Even accepting that Chemical Dynamics applies here, see 839 F.2d at 1571 (considering whether "a single unified design" that constitutes a "unitary mark" can be "mutilate[ed]"), it does not support Plaintiff's position. There, the Federal Circuit affirmed the Trademark Trial and Appeal Board's refusal to register a portion of a registered composite mark. Id. at 1570. The court found that "[t]here [we]re no facts from which it could be inferred that customers or the trade generally so view" the relevant portions of the registered mark as separate, and testimony that the company had used the relevant portion of the mark "for five years" did not establish that it had been "used separately rather than as part of the entire" mark. Id. at 1571.

11

Here, the only evidence that "ID" was used as a distinct mark in 2009 was testimony that Plaintiff had used it as a "favicon," [Day 2 at 103:16–22], but the jury never saw that favicon, and in any event, the 2009 date is contradicted by the registration for "ID," which says that Plaintiff began using it "at least as early as April 1, 2011." [Day 6 at 34:6–7]. Moreover, although Plaintiff's marketing expert testified that "CARiD" and ID are different marks" and are visually distinct, [Day 3 at 60:4–6, 61:12–14, 62:14–15], he also testified that both car and ID are, or at least can be, generic terms, [id. at 57:21–59:11]. The jury could have interpreted this to mean that Plaintiff's CARiD marks, as used in 2009, were unique because of the combination of its parts, not the ID portion standing alone. Accordingly, based on the evidence presented, the jury could have found that the use of "iD" in CARiD was not sufficient to establish a "separate and distinct commercial impression," Chem. Dynamics, 839 F.2d at 1571, and that Plaintiff therefore did not establish that it owned a valid "iD" mark prior to Defendant owning its (id) logo.

Second, Plaintiff argues in the alternative that it "demonstrated ownership of the ID mark based on the doctrine of tacking." [ECF No. 220 at 18–20]. Under the doctrine of tacking, two marks may be tacked, or in other words, a later mark can adopt the use date of an earlier mark, where the two marks are "'legal equivalents,' or in other words, 'create the same, continuing commercial impression' so that consumers 'consider both as the same mark.'" Hana Fin., Inc. v. Hana Bank, 574 U.S. 418, 422 (2015) (quoting Van Dyne-Crotty, Inc. v. Wear-Guard Corp., 926 F.2d 1156, 1159 (Fed. Cir. 1991), abrogated on other grounds by Hana Fin., 574 U.S. 418). "The commercial impression that a mark conveys must be viewed through the eyes of a consumer." Id. (quoting DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd., 695 F.3d 1247, 1253 (Fed. Cir. 2012)). The Supreme Court has held that "[a]pplication of a test that relies upon

an ordinary consumer's understanding of the impression that a mark conveys falls comfortably within the ken of a jury." Id.

On this issue the Court instructed the jury as follows, which Plaintiff does not take issue with:

> [T]acking . . . allows a party to claim priority in a mark based on the first use date of a similar but technically distinct mark when the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom, such that consumers consider both as the same mark.  If [Plaintiff] proves by a preponderance of the evidence that its ID mark has the same continuing commercial impression as the ID portion used in its CARiD logo beginning in 2009, then you can use the first date of its use of its CARiD mark as the priority date for the ID mark too.  If however [Plaintiff] has not shown by a preponderance of the evidence that its ID mark has the same continuing commercial impression as the ID portion used in the CARiD logo used in 2009, then you cannot conclude that it can use the date it started using its CARiD mark as the date to claim priority for the ID mark.  The priority date of ID will be when it was first used in the marketplace by whichever party used it first.

[Day 6 at 59:2–19].

For many of the same reasons that the jury could have found that Plaintiff did not have rights in "ID" as a separate portion of CARiD in 2009, see supra, the jury could have found that Plaintiff's later use of "ID" does not tack to any use of "ID" in 2009.  Specifically, both car and ID are, or at least can be, generic terms, [id. at 57:21–59:11], such that consumers may have only considered CARiD as a whole.  Moreover, there was very little, if any, evidence that "ID" was used by itself in 2009, see [Day 2 at 103:16–22], such that consumers would have considered it as legally equivalent to the later use of "ID."  Accordingly, given the evidence at trial and the fact that whether to find tacking "falls comfortably within the ken of a jury," Hana Fin., 574 U.S. at 422, the Court concludes that the jury could have found that Plaintiff did not own a valid "iD"

mark prior to Defendant owning the [id] logo, and thus denies Plaintiff's request for JMOL on this issue.[8]

### C. Plaintiff's Willful Infringement of the IDParts Mark

Lastly, Plaintiff argues in less than a paragraph that "the Court should also grant judgment as a matter of law that Plaintiff's use of the name PARTS iD [sic] did not infringe on Defendant's IDParts mark." [ECF No. 220 at 20]. The only explicit argument it makes in support of this position is that "[i]n order to succeed on its claim of infringement, IDParts was required to prove that it owned enforceable rights in the IDParts mark," and that "IDParts cannot have ownership rights in the common law IDParts mark if that mark is confusingly similar to Plaintiff's CarID mark." [Id.].

As an initial matter, as discussed above, the jury could have found that Defendant's use of "IDParts" or its [id] logo did not infringe the CARiD marks, see supra, and thus Plaintiff's argument that "IDParts" was not a valid mark is unavailing. See [ECF No. 220 at 20].

Second, the jury could have found a likelihood of confusion between "IDParts" and "PartsID." Specifically, the jury could have found, as testified to by Plaintiff's expert, that the two names are confusingly similar. [Day 3 at 74:25–75:2]; see also Pignons, 657 F.2d at 487 (first factor: "similarity of the marks"). In addition, it could have found actual confusion

---

[8] Once the jury found that Plaintiff did not own a valid "ID" mark prior to Defendant owning the [id] logo, it could not have found infringement. See Borinquen Biscuit Corp., 443 F.3d at 116 ("Before a party can succeed in a [trademark] infringement action, it must demonstrate both that its mark merits protection and that the allegedly infringing use is likely to result in consumer confusion."). The Court therefore need not consider whether there was a likelihood of confusion with respect to these marks.

between the two marks. [Day 4 at 172:6–173:22]; see also Pignons, 657 F.2d at 487 (sixth factor: "evidence of actual confusion"). Finally, the jury could have found that Plaintiff adopted the "PARTSiD" name with knowledge of Defendant's name and with the intent to claim intellectual property rights at Defendant's expense. See [Day 2 at 123:23–25 (Plaintiff was "aware that the company IDParts existed when [it] selected the name PARTSiD"); id. at 124:1–7 ("Q. And from your perspective, why was the selection of PARTS iD okay given the fact that there was a company called IDParts? A. We were the first to use the ID mark back in 2009. We had a variety of intellectual property registrations with the Trademark Office."); id. at 163:6–164:1 (the name change happened after the lawsuit between the parties began); see also Pignons, 657 F.2d at 487 (seventh factor: "intent in adopting its mark").[9] Although other Pignons factors are neutral or could weigh slightly against a finding of infringement, see supra, the jury could have reasonably weighed this evidence and found a likelihood of confusion between "IDParts" and "PARTS iD." Accordingly, the Court denies Plaintiff's request to reverse the jury's finding that Plaintiff willfully infringed Defendant's IDParts mark based upon its use of PARTS iD. [Verdict at 5–6].

## IV.    CONCLUSION

Accordingly, Plaintiff's motion for judgment as a matter of law, [ECF No. 219], is DENIED.[10]

**SO ORDERED.**

---

[9] These same facts support the jury's finding that Plaintiff's infringement was willful. [Verdict at 6].

[10] Because the Court finds that Plaintiff's motion fails on the merits, it does not consider the parties' arguments with respect to the timeliness of the motion. See, e.g., [ECF No. 221 at 9–12].

July 1, 2024                                                            */s/ Allison D. Burroughs*  
                                                                        ALLISON D. BURROUGHS  
                                                                        U.S. DISTRICT JUDGE